IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | |
|---|---|
| **TATIANA (TANYA) SHERMAN** | **PLAINTIFF** |
| **VERSUS** | **CAUSE NO.** 1:21cv190-GHD-DAS |
| **ITAWAMBA COMMUNITY COLLEGE,** **JOE LOWDER, TZER NAN WATERS,** **and DR. JAY ALLEN** | **DEFENDANTS** |
| | **JURY TRIAL DEMANDED** |

## COMPLAINT

This is an action to recover damages for: 1) violations of the First Amendment to the United States Constitution; 2) violation of public policy; 3) violation of Mississippi Whistleblower Statute, Mississippi Code Annotated § 25-9-173; and 4) malicious interference with employment. Plaintiff shows the Court the following facts:

1.

Plaintiff TATIANA (TANYA) SHERMAN is an adult resident citizen of 1010 Washington Avenue, Oxford, Mississippi 38655. Plaintiff has worked for Defendant Itawamba Community College for a period of seventeen (17) years, the last fifteen (15) years of which has been as a Workforce Project Manager. Plaintiff's job description is attached hereto as Exhibit "A." Her ordinary job duties do not include making reports of criminal activities or of making reports to the State Auditor.

00362116.WPD

2.

Defendant ITAWAMBA COMMUNITY COLLEGE (hereinafter "Defendant ICC") is a local governmental entity and not an arm of the State of Mississippi. At all relevant times, it acted under color of state law. It is liable for the official policy decisions of Defendant Dr. Jay Allen on behalf of Defendant ICC to discharge Plaintiff from her employment. It is also liable for Defendant Dr. Jay Allen's gross negligence and gross indifference to Plaintiff's rights by failing to supervise his subordinates so as to assure that they not violate the constitutional rights of employees. It is also liable for the acts of Defendant Joe Lowder, because Lowder may have been delegated official policy making authority to make the employment decisions at issue in this case. It may be served with process by service upon its President, Jay Allen, at 602 West Hill Street, Fulton, Mississippi 38843.

Defendant JOE LOWDER (hereinafter "Defendant Lowder"), upon information and belief, is an adult resident citizen of Tennessee. Defendant Lowder may be served with process at 1328 Buckhead Trail, Mount Juliet, Tennessee 37122-4191, via certified mail/return receipt requested/restricted delivery, or wherever he may be found. Defendant Lowder has served both as Director of Workforce Development at Defendant ICC, and as Dean of the Department of Workforce Development at Defendant ICC. The acts complained of occurred both in Defendant Lowder's capacity as Director of Workforce Development and in his capacity as Dean. Because of the doctrine of "qualified immunity," applicable to federal damages claims, Plaintiff sues Defendant Lowder for damages for state law violations only. Plaintiff sues Defendant Lowder individually for equitable relief for federal violations.

Defendant TZER NAN WATERS (hereinafter "Defendant Waters") is an adult resident citizen of Lee County, Mississippi. Defendant Waters be served with process at Itawamba

Community College, 3200 Adams Farm Road, Belden, Mississippi 38826. Although she had no qualifications for the position, Defendant Waters was promoted by Defendant Lowder to the position of Workforce Project Director in October 2018. Because of the doctrine of "qualified immunity," applicable to federal damages claims, Defendant Waters is sued for damages for state law violations only. Defendant Waters proximately caused Plaintiff's discharge by engaging in conspiracy with Defendant Lowder to make false claims of poor performance by Plaintiff in order to cover-up retaliatory action being made against her because of her complaints of illegal activity.

Defendant DR. JAY ALLEN (hereinafter "Defendant Allen") is an adult resident citizen of Itawamba County, Mississippi. Defendant Allen may be served with process at 602 West Hill Street, Fulton, Mississippi 38843. Defendant Allen made the official policy decision of Defendant ICC to terminate Plaintiff from her employment. Because of the doctrine of "qualified immunity," applicable to federal law damages claims, Defendant Allen is sued for equitable relief and damages under state law. Defendant Allen is sued individually for declaratory, injunctive, and equitable relief for federal violations.

3.

This Court has federal question jurisdiction over Plaintiff's First Amendment claims under 28 U.S.C. § 1331 and has civil rights jurisdiction under 28 U.S.C. § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a). This action is authorized by 42 U.S.C.A. § 1983. Venue is proper in the Northern District of Mississippi, since the acts complained of occurred in Lee County, Mississippi.

4.

Plaintiff was terminated from her employment by Defendant ICC through the letter of May 24, 2021, attached hereto as Exhibit "B."

5.

The events which led to Plaintiff's termination occurred after Defendant Lowder was hired by Defendant ICC in approximately November 2015. Defendant Lowder was hired as the Director of the Workforce Training Program, and was ultimately promoted to Dean. Plaintiff was a Project Manager in the Workforce Training Program, and was an immediate subordinate of Defendant Lowder. The Workforce Training Program is a State program, which is federally generated through the Mississippi Department of Employment Security, which distributes the funds to various state and local entities, including the Workforce Training Program operated by Defendant ICC in Lee, Monroe, Itawamba, Pontotoc, and Chickasaw Counties in Mississippi. Its purpose is to train workers for employment in business and manufacturing. The Workforce Training Program is governed by both federal and state regulations, which require documentation and accounting for money spent in workforce training.

6.

Following his obtaining the position of Director of the Workforce Training Program, Defendant Lowder made it clear that he did not intend to comply with applicable statutes and regulations. His policy was to obtain maximum money for furniture manufacturers and/or Defendant ICC, even though this involved committing fraud against taxpayers.

7.

In early 2016, individual employees of a private furniture company, Southern Motion, called representatives of Defendant ICC to report that Southern Motion was forcing the workers to sign documents, indicating they were receiving training when they were, in fact, not receiving training. The workers were upset because Southern Motion was representing that training was being given, which would qualify workers for higher paying jobs, when, in fact, Southern Motion was giving them little or no training.

8.

Around the same time as the workers' complaints, Defendant Lowder became employed by Defendant ICC. Plaintiff immediately reported the problem to Defendant Lowder, and explained that Defendant ICC was the conduit for Southern Motion receiving money under false pretenses, since Defendant ICC was causing Southern Motion to provide huge amounts of money for training, and there was not sufficient documentation from Southern Motion demonstrating that Southern Motion was giving the training.

9.

To attempt to solve the problem by complying with applicable state and federal regulations, which were designed to ensure that training was occurring, Defendant Lowder determined to prepare forms so as to falsely indicate that the training was occurring. Specifically, Defendant Lowder directed the preparation of forms, which had no beginning date and no ending date, making it difficult to prove that training was not occurring.

10.

Defendant Lowder directed or permitted Southern Motion to list "two trainers – one being paid $25.00 an hour and one being paid $15.00 per hour," as "trainers," and to then obtain reimbursement from Defendant ICC for the trainer being paid $25.00 per hour. In fact, the "trainers" were either a production manager or a supervisor who were given the title of "trainer," so as to allow Southern Motion to receive reimbursement at $25.00 per hour. Defendant Lowder's causing Southern Motion to receive $25.00 per hour for alleged training by a supervisor, when the trainer was paid no more than $15.00 per hour, constitutes receiving money under false pretenses by Southern Motion and constitutes the causing of theft of taxpayer funds by Defendant Lowder, acting on behalf of Defendant ICC.

11.

Through the above-described scheme, Defendant Lowder was able to cause Southern Motion to receive thousands of dollars for "training," which it was not providing. Furthermore, after initially learning about the criminal scheme involving Southern Motion, Plaintiff learned that other furniture manufacturing companies were engaging in similar criminal conduct with the assistance of Defendant ICC and Defendant Lowder.

12.

Plaintiff repeatedly complained to Defendant Lowder that Defendant was not in compliance with government regulations and policies, requiring documentation of training, and told Defendant Lowder that Defendant ICC would be repaying the money that it was causing to be illegally paid to the furniture companies.

13.

Besides the criminal activities, above-described, which was resulting in receipt of money by furniture companies under false pretenses, Plaintiff also complained to Defendant Lowder that the Workforce Training Program was engaging in "double billing" with respect to certain companies not engaged in furniture manufacturing. As to these companies, Defendant ICC received State money for training, but also billed these private employers for the same training. In the case of these companies, which included mostly small companies, but also included Toyota Motor Manufacturing Mississippi, Inc., Defendant ICC was cheating the companies because it was billing them for services for which Defendant ICC was already being paid. Defendant ICC, acting through Defendant Lowder, thus engaged in a scheme to receive money from some companies under false pretenses.

14.

In response to Plaintiff's repeated complaints about failing to comply with applicable laws and regulations regarding the documentation of training and regarding "double billing," Defendant Lowder responded, "They will never know." He informed Plaintiff that she was too much "by the book," and that he had already fired one employee for not doing as he was told at Florida State.

15.

In October 2018, Defendant Lowder decided to hire a separate Director of Workforce Training, since he did not want to perform the duties of both Dean and of Director of Workforce Training. Defendant Lowder caused the unqualified Defendant Waters – who had no experience in workforce project management – to be promoted to the position of Director of Workforce Training, making her Plaintiff's immediate supervisor.

16.

In order to diminish Plaintiff's credibility, and to cover up Plaintiff's complaints about illegal activity on March 8, 2019, Defendant Lowder put Plaintiff on a "performance improvement plan." Defendant Waters supervised Plaintiff's performance improvement plan. Defendant Waters joined in Defendant Lowder's fake plan by purporting to supervise Plaintiff when she had no knowledge of how to do Plaintiff's job and must have known that the performance improvement plan was a hoax.

17.

Plaintiff had devoted fifteen (15) years of her life to a diligent performance of her duties in the important work of providing training for workers, and of making proper utilization of federal and state funds. The fake "performance improvement plan" distressed Plaintiff. She sought counsel. At Plaintiff's request, and acting as an agent of Plaintiff, Plaintiff's counsel wrote the letter, dated September 24, 2019, attached hereto as Exhibit "C." This letter of complaint documents examples of Defendant Lowder's illegal activity. The allegations of Exhibit "C" are hereby incorporated into this Complaint by reference. Exhibit "C" truthfully details the illegal activities in which Defendant Lowder was engaging, including the fact that Defendant Lowder was being paid as a full-time employee of Defendant ICC when he was spending most of his time on private business ventures, such as trying to start a micro brewery – a venture for which he asked Plaintiff to get a $250,000.00 investment from Plaintiff's husband, a physician.

18.

At Plaintiff's direction, Plaintiff's counsel copied the Mississippi State Auditor with the letter of September 24, 2019, attached hereto as Exhibit "C." Upon receipt of Plaintiff's letter, the

Mississippi State Auditor began an investigation into the activities in the Workforce Development Program at Defendant ICC. This investigation began shortly after September 24, 2019. Upon information and belief, the State Auditor's investigators requested information from Defendants.

19.

While the State Auditor's investigators were continuing their investigation, Defendants continued with a "performance improvement plan" for Plaintiff. Plaintiff made correct, detailed responses to the false charges made in the "performance improvement plan" concocted by Defendants Lowder and Waters. Plaintiff demonstrated that she was not guilty of any poor performance and that the "performance improvement plan" was a ruse. Plaintiff's correct responses to Defendants regarding their bogus "performance improvement plan" was made during the same time as the State Auditor investigators were investigating Defendants. Defendants Lowder and Waters made false claims that Plaintiff was not complying with her performance improvement plan and disregarded Plaintiff's detailed responses to the performance improvement plan, which documented that Plaintiff was not guilty of any deficient performance, and demonstrated that Defendants' performance improvement plan was a hoax.

20.

The investigation continued for many months. On February 4, 2021, approximately fifteen (15) investigators from the Mississippi State Auditor's Office conducted a raid of Defendant ICC. Defendant ICC employees were not allowed to leave while the State Auditor's investigators seized documents and conducted interviews. Shortly after the raid, Defendant ICC retained private attorneys, who ordered that all employees of Defendant ICC disclose to Defendant ICC's attorneys what information the employees had furnished to the State Auditor's investigators. One employee,

Emily Lawrence, told Defendant ICC's attorneys (Mike Hurst and Mark Halbert) and a Human Resources representative of Defendant ICC that she had told investigators about the Mississippi Office of the State Auditor about Defendant ICC's double-billing, and had told the State Auditor investigators about being instructed to falsify documentation in an attempt to hide this scheme. After Lawrence told the attorneys and a Human Resources representative what Lawrence had truthfully told investigators, Defendant Allen summarily fired Lawrence. Like Plaintiff, Lawrence had also earlier been put on a bogus "performance improvement plan" when she had refused to issue reimbursement billing at a rate of $25.00 per hour for training services for which a furniture company was paying, at most, $15.00 per hour.

21.

On or about May 24, 2021, Defendant Allen, as the official policy decision of Defendant ICC, terminated Plaintiff's employment through the letter, attached hereto as Exhibit "B." Plaintiff was terminated because she had reported the illegal criminal activities.

22.

Defendants are liable to Plaintiff as follows:

**Count I:** The termination of Plaintiff was an official policy decision of Defendant ICC, through Defendant Allen, because of the recommendations of Defendant Lowder and/or Defendant Waters. It was an official policy decision of Defendant ICC, made because of Plaintiff's speech. Plaintiff's speech reporting illegal activity was not a part of her ordinary job duties. Defendant ICC is liable for damages for violation of Plaintiff's First Amendment rights.

**Count II:** Defendant ICC violated state law by discharging Plaintiff in violation of the *McArn* doctrine, which prohibits the discharge of individuals because they report illegal activity or refuse to participate in illegal activity. If this Complaint must be preceded by a "Notice of Claim," Plaintiff requests that the allegations in this count be stayed for ninety

|  |  |
|---|---|
|  | (90) days after the filing of the Notice of Claim, attached hereto as Exhibit "D." |
| Count III: | Defendant ICC and Defendant Allen discharged Plaintiff in violation of the Mississippi Whistleblower Statute, Mississippi Code Annotated § 25-9-73, *et seq*. If this Complaint requires compliance with the Mississippi Tort Claims Act notice requirements, Plaintiff requests that this count be stayed for ninety (90) days after filing of the Notice of Claim, attached hereto as Exhibit "D." |
| Count IV: | Individual Defendants maliciously and intentionally interfered with Plaintiff's employment by causing Defendant ICC to terminate her. They caused her to be fired for the bad faith reason that Plaintiff reported illegal activity. |
| Count V: | Individual Defendants violated Plaintiff's United States Constitution First Amendment and Mississippi Constitution free speech rights by causing her discharge because of exercise of the right to freedom of speech. Because of the "qualified immunity doctrine," Plaintiff does not sue the individual Defendants for damages for this federal law violation. Plaintiff does, however, request declaratory, injunctive, and equitable relief against the individual Defendants for this federal violation, reinstating her to her employment. |

23.

The law is unsettled as to whether Plaintiff must make a Mississippi Tort Claims Act claim prior to filing suit for state law claims against Defendant ICC. Out of an abundance of caution, Plaintiff files this suit at this time, but requests that the state law claims of violation of state law be stayed for a period of ninety (90) days in order to allow Defendant ICC to act on the Notice of Claim, which is attached hereto as Exhibit "D."

24.

**INDEMNIFICATION**

Any recovery which Plaintiff obtains in this case is due to the active wrongdoing of the individual Defendants Joe Lowder and Dr. Jay Allen. Defendant ICC has already incurred attorneys'

fees for the defense of the auditor's claims made because of the active wrongdoing of Defendants Lowder and Allen. Furthermore, any judgment recovered in this case will be due to the active wrongdoing of Defendants Lowder and Allen. Defendant ICC is liable because Defendants Lowder and Allen were active wrongdoers. Accordingly, this Court should enter an order of indemnification under which Defendants Lowder and Allen indemnify Defendant ICC for the attorneys' fees it has expended in defense of the misappropriation of funds by Defendant Lowder and in defense of Plaintiff's meritorious claims.

25.

Plaintiff has suffered lost income and will suffer lost income in the future. She has also suffered mental anxiety and stress as a result of all Defendants' illegal acts.

## REQUEST FOR RELIEF

Plaintiff requests actual and punitive damages in an amount to be determined by a jury, and requests injunctive and declaratory relief, directing Defendants to reinstate Plaintiff to her employment, and requests reasonable attorneys' fees.

RESPECTFULLY SUBMITTED, this the 21st day of December, 2021.

                                                TATIANA (TANYA) SHERMAN, Plaintiff

By:    */s/ JIM WAIDE*
        Jim Waide, MS Bar No. 6857
        waide@waidelaw.com
        WAIDE & ASSOCIATES, P.A.
        332 North Spring Street
        Tupelo, MS 38804-3955
        Post Office Box 1357
        Tupelo, MS 38802-1357
        (662) 842-7324 / Telephone
        (662) 842-8056 / Facsimile

        ATTORNEY FOR PLAINTIFF

STATE OF MISSISSIPPI

COUNTY OF Lafayette

PERSONALLY came and appeared before me, the undersigned authority in and for the aforesaid jurisdiction, the within named TATIANA (TANYA) SHERMAN, who, after being first duly sworn, states under oath that the facts contained in the above and foregoing COMPLAINT are true and correct as stated therein.

*Tatiana Sherman*
TATIANA (TANYA) SHERMAN

GIVEN under my hand and official seal of office on this the 7 day of December, 2021.

NOTARY PUBLIC

My Commission Expires: 7/30/2024

(SEAL)
STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 229331
RANDALL P. RANKIN
Commission Expires
July 30, 2024
LAFAYETTE COUNTY