IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | |
|---|---|
| **TATIANA (TANYA) SHERMAN** | **PLAINTIFF** |
| **VERSUS** | **CAUSE NO. 1:21-CV-00190-GHD-DAS** |
| **ITAWAMBA COMMUNITY COLLEGE,** **JOE LOWDER, TZER NAN WATERS,** **and DR. JAY ALLEN** | **DEFENDANTS** |
| | **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

This is an action to recover damages for: 1) violations of the First Amendment to the United States Constitution; 2) violation of public policy; 3) violation of Mississippi Whistleblower Statute, MISS. CODE ANN. § 25-9-173; and 4) malicious interference with employment. Plaintiff shows the Court the following facts:

1.

Plaintiff TATIANA (TANYA) SHERMAN is an adult resident citizen of 1010 Washington Avenue, Oxford, Mississippi 38655.

2.

Defendant ITAWAMBA COMMUNITY COLLEGE (hereinafter "Defendant ICC") is a local governmental entity and not an arm of the State of Mississippi. At all relevant times, Defendant ICC acted under color of state law. Defendant ICC is liable for the official policy decisions of Defendant Dr. Jay Allen, on behalf of Defendant ICC, to discharge Plaintiff from her employment. Defendant ICC is also liable for Defendant Dr. Jay Allen's gross negligence and gross indifference to Plaintiff's

rights by failing to supervise his subordinates so as to assure that they not violate the constitutional rights of employees. Defendant ICC is also liable for the acts of Defendant Joe Lowder, because Lowder may have been delegated official policy making authority to make the employment decisions at issue in this case. Defendant ICC may be served with process by service upon its President, Jay Allen, at 602 West Hill Street, Fulton, Mississippi 38843.

Defendant JOE LOWDER (hereinafter "Defendant Lowder"), upon information and belief, is an adult resident citizen of Tennessee. Defendant Lowder may be served with process at 1328 Buckhead Trail, Mount Juliet, Tennessee 37122-4191, via certified mail/return receipt requested/restricted delivery, or wherever he may be found. Defendant Lowder has served both as Director of Workforce Development at Defendant ICC, and as Dean of the Department of Workforce Development at Defendant ICC. The acts complained of occurred both in Defendant Lowder's capacity as Director of Workforce Development and in his capacity as Dean. Because of the doctrine of qualified immunity, applicable to federal damages claims, Plaintiff sues Defendant Lowder for damages for state law violations only. Plaintiff sues Defendant Lowder individually for equitable relief for federal violations.

Defendant TZER NAN WATERS (hereinafter "Defendant Waters") is an adult resident citizen of Lee County, Mississippi. Defendant Waters be served with process at Itawamba Community College, 3200 Adams Farm Road, Belden, Mississippi 38826. Although she limited qualifications for the position, Defendant Waters was promoted with the help of Defendant Lowder to the position of Workforce Project Director in October 2018. Because of the doctrine of qualified immunity, applicable to federal damages claims, Defendant Waters is sued for damages for state law violations only. Defendant Waters proximately caused Plaintiff's discharge by engaging in

conspiracy with Defendant Lowder to make false claims of poor performance by Plaintiff in order to cover-up retaliatory action being made against her because of her complaints of illegal activity.

Defendant DR. JAY ALLEN (hereinafter "Defendant Allen") is an adult resident citizen of Itawamba County, Mississippi. Defendant Allen may be served with process at 602 West Hill Street, Fulton, Mississippi 38843. Defendant Allen made the official policy decision of Defendant ICC to terminate Plaintiff from her employment. Because of the doctrine of qualified immunity, applicable to federal law damages claims, Defendant Allen is sued for equitable relief and damages under state law. Defendant Allen is sued individually for declaratory, injunctive, and equitable relief for federal violations.

3.

This Court has federal question jurisdiction over Plaintiff's First Amendment claims under 28 U.S.C. § 1331 and has civil rights jurisdiction under 28 U.S.C. § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a). This action is authorized by 42 U.S.C.A. § 1983. Venue is proper in the Northern District of Mississippi, since the acts complained of occurred in Lee County, Mississippi.

4.

Around 2003, Plaintiff was hired by Defendant Itawamba Community College as a dorm manager, a job she performed until around 2011. Around 2005, Plaintiff was hired as a Workforce Project Manager at ICC. Plaintiff's job description is attached hereto as Exhibit "A." Plaintiff's ordinary job duties do not include making reports of criminal activities or of making reports to the State Auditor.

5.

The Workforce Training Program is a State program, which is federally generated through the Mississippi Department of Employment Security, which distributes the funds to various state and local entities, including the Workforce Training Program operated by Defendant ICC in Lee, Monroe, Itawamba, Pontotoc, and Chickasaw Counties in Mississippi. Its purpose is to train workers for employment in business and manufacturing. The Workforce Training Program is governed by both federal and state regulations, which require documentation and accounting for money spent in workforce training.

6.

During the first fourteen (14) years of Plaintiff's career as a Workforce Project Manager, she was regarded as an excellent performer, received nothing but excellent reviews, and received no disciplinary actions. However, that would change after Plaintiff repeatedly reported the criminal actions of Defendant Lowder and Defendant Waters.

7.

In the Fall of 2015, individual employees of a private furniture company, Southern Motion, called representatives of Defendant ICC to report that Southern Motion was forcing the workers to sign documents, indicating they were receiving training when they were, in fact, not receiving training. The workers were upset because Southern Motion was representing that training was being given, which would qualify workers for higher-paying jobs, when, in fact, Southern Motion was giving them little or no training.

8.

Plaintiff and Defendant Waters went to Southern Motion and Plaintiff explained to the company officials that it would be fraudulent if a trainee signed a training log without receiving training in that class.

9.

Around November 2015, Defendant Joe Lowder was hired by Defendant ICC as the Director of the Workforce Training Program. Plaintiff was a Project Manager in the Workforce Training Program, and was an immediate subordinate of Defendant Lowder.

10.

After Defendant Lowder was hired, Plaintiff reported the Southern Motion issue to Defendant Lowder, and explained that Defendant ICC was the conduit for issuing money under false pretenses. Plaintiff told Lowder that workers complained they were forced to sign in training logs without participating in training resulting in the company receiving money under false pretense.

11.

Instead of being concerned as to how to stop the illegality, Defendant Lowder changed the training logs at Southern Motion so it would be easier to falsify the logs. Defendant Lowder made it clear that he did not intend to comply with applicable statutes and regulations. Defendant Lowder's policy was to obtain maximum money for furniture manufacturers and/or Defendant ICC, even though this involved committing fraud against taxpayers.

12.

Defendant Lowder also directed or permitted Southern Motion to list "two trainers – one being paid $35.00 an hour and one being paid $15.00 per hour," as "trainers," and to then obtain

reimbursement from Defendant ICC for the trainer being paid $35.00 per hour. In fact, the "trainers" were either a production manager or a supervisor who were given the title of "trainer," so as to allow Southern Motion to receive reimbursement at $35.00 per hour. Defendant Lowder's causing Southern Motion to receive $35.00 per hour for alleged training by a supervisor, when the trainer was paid around $15.00 per hour, constitutes receiving money under false pretenses by Southern Motion and constitutes the causing of theft of taxpayer funds by Defendant Lowder, acting on behalf of Defendant ICC.

13.

Through the above-described scheme, Defendant Lowder was able to cause Southern Motion to receive thousands of dollars for "training," which it was not providing. Plaintiff learned that other furniture manufacturing companies were engaging in similar criminal conduct with the assistance of Defendant ICC and Defendant Lowder.

14.

Plaintiff repeatedly complained to Defendant Lowder and Defendant Waters that Defendant ICC was not in compliance with government regulations and policies, requiring documentation of training, and told Defendant Lowder that Defendant ICC would be repaying the money that it was causing to be illegally paid to the furniture companies.

15.

Besides the criminal activities, above-described, which was resulting in receipt of money by furniture companies under false pretenses, Plaintiff also complained to Defendant Lowder that the Workforce Training Program was engaging in "double billing" with respect to certain companies not engaged in furniture manufacturing. As to these companies, Defendant ICC received State money

for training, but also billed these private employers for the same training. In the case of these companies, which included mostly small companies, but also included Toyota Motor Manufacturing Mississippi, Inc., Defendant ICC was cheating the companies because it was billing them for services for which Defendant ICC was already being paid. Defendant ICC, acting through Defendant Lowder, thus engaged in a scheme to receive money from some companies under false pretenses.

16.

In response to Plaintiff's repeated complaints about failing to comply with applicable laws and regulations regarding the documentation of training and regarding "double billing," Defendant Lowder responded: "They will never know." Defendant Lowder informed Plaintiff that she was too much "by the book," and that he had previously fired an employee for not doing as he was told at Florida State.

17.

In October 2018, Defendant Lowder decided to hire a separate Director of Workforce Training, since he did not want to perform the duties of both Dean and of Director of Workforce Training. Defendant Lowder caused the unqualified Defendant Waters – who had no experience in workforce project management – to be promoted to the position of Director of Workforce Training, making her Plaintiff's immediate supervisor.

18.

Around November 2018, Plaintiff asked Jason Spradlin and Defendant Waters why they were using state reimbursement for a project that was one hundred percent funded by federal grants. Defendant Waters falsely claimed they had other expenses. Plaintiff told Defendant Waters that was fraud and money laundering.

19.

Around two (2) months later, in January 2019, Defendant Lowder told Plaintiff her performance was poor and she was going to get a poor evaluation. In the previous three (3) plus years that Defendant Lowder was Plaintiff's supervisor, all of his comments about Plaintiff's work performance were glowing. On numerous occasions, Defendant Lowder told Plaintiff she was doing an excellent job and was a "go getter." The only plausible reason for Defendant Lowder's sudden change in regards to Plaintiff's work performance was because she had repeatedly reported illegal activity.

20.

In order to diminish Plaintiff's credibility, and to cover up Plaintiff's complaints about illegal activity, on March 8, 2019, Defendant Lowder put Plaintiff on a performance improvement plan ("PIP"). Defendant Waters supervised Plaintiff's performance improvement plan. Defendant Waters joined in Defendant Lowder's fake plan by purporting to supervise Plaintiff when she had no knowledge of how to perform Plaintiff's job and must have known that the performance improvement plan was a hoax.

21.

In response to the PIP, Plaintiff presented Defendant Lowder a twenty (20) page rebuttal, with almost one hundred (100) pages of documents attached, refuting the false charges made in the "performance improvement plan" concocted by Defendants Lowder and Waters. *See* Plaintiff's response to the PIP, attached hereto as Exhibit "B." Plaintiff demonstrated that she was not guilty of any poor performance and that the "performance improvement plan" was a ruse.

22.

Around a few months after being put on the PIP, Plaintiff met with Human Resources Director Tim Senter, and told him that the only reason that she was put on the PIP by Defendant Lowder was in retaliation for reporting illegal activity being committed or facilitated by Defendants Lowder and Waters.

23.

Plaintiff had devoted around fourteen (14) years of her life to the diligent performance of her duties in the important work of providing training for workers, and of making proper utilization of federal and state funds. The fake "performance improvement plan" distressed Plaintiff. Therefore, Plaintiff sought counsel. At Plaintiff's request, and acting as an agent of Plaintiff, Plaintiff's counsel wrote the letter dated September 24, 2019, which attached hereto as Exhibit "C." This letter of complaint documents examples of Defendant Lowder's illegal activity. The allegations of Exhibit "C" are hereby incorporated into this Complaint by reference. Exhibit "C" truthfully details many of the illegal activities in which Defendant Lowder was engaging, including the fact that Defendant Lowder was being paid as a full-time employee of Defendant ICC, when he was spending most of his time on private business ventures, such as trying to start a micro brewery – a venture for which he asked Plaintiff to get a $250,000.00 investment from Plaintiff's husband, a physician.

24.

At Plaintiff's direction, Plaintiff's counsel copied the Mississippi State Auditor with the letter of September 24, 2019. *See* Exhibit "C." Simultaneously, the Mississippi State Auditor began an investigation into the activities in the Workforce Development Program at Defendant ICC.

25.

During Plaintiff's entire career as a Workforce Project Manager, Plaintiff was on a yearly contract to work from July 1 to June 30, the school year. In the Spring of 2020, Plaintiff was told she would no longer be working under a contract, but, instead, it would merely be a "work agreement." This was done so it would be easier to terminate Plaintiff. A person working under a yearly contract can only be terminated by the board for cause. A person with a work agreement is "at will," and does not need board approval for termination and can be fired without cause. *See* ICC Employee Handbook, first page, attached hereto as Exhibit "D."

26.

The investigation being conducted by the State Auditor continued for many months. On February 4, 2021, approximately fifteen (15) investigators from the Mississippi State Auditor's Office conducted a raid of Defendant ICC. Defendant ICC employees were not allowed to leave while the State Auditor's investigators seized documents and conducted interviews. Shortly after the raid, Defendant ICC retained private attorneys, who ordered that all employees of Defendant ICC disclose to Defendant ICC's attorneys what information the employees had furnished to the State Auditor's investigators. One employee, Emily Lawrence, told Defendant ICC's attorneys (Mike Hurst and Mark Halbert), and a Human Resources representative of Defendant ICC, that she had told investigators with the Mississippi Office of the State Auditor about Defendant ICC's double-billing, and had told the State Auditor investigators about being instructed to falsify documentation in an attempt to hide this scheme. After Lawrence told the attorneys and a Human Resources representative what Lawrence had truthfully told investigators, Defendant Allen summarily fired Lawrence. Like Plaintiff, Lawrence had also earlier been put on a bogus "performance improvement

plan" when she had refused to issue reimbursement at a rate of $35.00 per hour for training services for which a furniture company was paying around $15.00 per hour.

27.

On or about May 24, 2021, Defendant Allen, as the official policy decision maker of Defendant ICC, terminated Plaintiff's employment through the letter, attached hereto as Exhibit "E." Plaintiff was terminated because she had reported the illegal criminal activities.

28.

In November 2021, Defendant Lowder was indicted for feloniously committing fraud and subordinating fraud with some of his employees against the State. *See* Indictment, attached hereto as Exhibit "F."

29.

Defendants are liable to Plaintiff as follows:

**Count I:** The termination of Plaintiff was an official policy decision of Defendant ICC, through Defendant Allen, because of the recommendations of Defendant Lowder and/or Defendant Waters. It was an official policy decision of Defendant ICC, made because of Plaintiff's speech. Plaintiff's speech reporting illegal activity was not a part of her ordinary job duties. Defendant ICC is liable for damages for violation of Plaintiff's First Amendment rights.

**Count II:** Defendant ICC violated state law by discharging Plaintiff in violation of the *McArn* doctrine, which prohibits the discharge of individuals because they report illegal activity or refuse to participate in illegal activity.

**Count III:** Defendant ICC and Defendant Allen discharged Plaintiff in violation of the Mississippi Whistleblower Statute, MISS. CODE ANN. § 25-9-73, *et seq.*"

**Count IV:** Individual Defendants Allen, Lowder and Waters, maliciously and intentionally interfered with Plaintiff's employment by causing

      Defendant ICC to terminate her. They caused her to be fired for the bad faith reason that Plaintiff reported illegal activity.

**Count V:** Individual Defendants violated Plaintiff's United States Constitution First Amendment and Mississippi Constitution free speech rights by causing her discharge because of exercise of the right to freedom of speech. Because of the qualified immunity doctrine, Plaintiff does not sue the individual Defendants for damages for this federal law violation. Plaintiff does, however, request declaratory, injunctive, and equitable relief against the individual Defendants for this federal violation, reinstating her to her employment.

30.

On December 21, 2021, Plaintiff filed a Notice of Claim under the Mississippi Tort Claims Act, attached hereto as Exhibit "G." More than ninety (90) days have passed since Plaintiff filed the Notice of Claim.

31.

**INDEMNIFICATION**

Any recovery which Plaintiff obtains in this case is due to the active wrongdoing of the individual Defendants Joe Lowder and Dr. Jay Allen. Defendant ICC has already incurred attorneys' fees for the defense of the State Auditor's claims made because of the active wrongdoing of Defendants Lowder and Allen. Furthermore, any judgment recovered in this case will be due to the active wrongdoing of Defendants Lowder and Allen. Defendant ICC is liable because Defendants Lowder and Allen were active wrongdoers. Accordingly, this Court should enter an order of indemnification under which Defendants Lowder and Allen indemnify Defendant ICC for the attorneys' fees it has expended in defense of the misappropriation of funds by Defendant Lowder and in defense of Plaintiff's meritorious claims.

32.

Plaintiff has suffered lost income and will suffer lost income in the future. Plaintiff has also suffered mental anxiety and stress as a result of all Defendants' illegal acts.

### REQUEST FOR RELIEF

Plaintiff requests actual and punitive damages in an amount to be determined by a jury, and requests injunctive and declaratory relief, directing Defendants to reinstate Plaintiff to her employment, and requests reasonable attorneys' fees.

RESPECTFULLY SUBMITTED, this the 23rd day of August, 2022.

        TATIANA (TANYA) SHERMAN, Plaintiff

By:   */s/ Ron L. Woodruff*
      Jim Waide, MS Bar No. 6857
      waide@waidelaw.com
      Rachel Pierce Waide, MS Bar No. 100420
      rpierce@waidelaw.com
      Ron Woodruff, MS Bar No. 100391
      rlw@waidelaw.com
      WAIDE & ASSOCIATES, P.A.
      332 North Spring Street
      Tupelo, MS 38804-3955
      Post Office Box 1357
      Tupelo, MS 38802-1357
      (662) 842-7324 / Telephone
      (662) 842-8056 / Facsimile

      ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This will certify that undersigned counsel for Plaintiff has this day filed the above and foregoing with the Clerk of the Court, utilizing this court's electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

**Benjamin E. Griffith, Esquire**
**Griffith Law Firm**
**Post Office Box 2248**
**Oxford, MS 38655**
**ben@glawms.com**
**clerk@glawms.com**

**COUNSEL FOR DEFENDANTS ITAWAMBA COMMUNITY COLLEGE, TZER NAN WATERS, AND DR. JAY ALLEN**

**Daniel H. Sparks, Esquire**
**Sparks Law Firm, PLLC**
**Post Office Box 2610**
**Oxford, MS 38655**
**daniel@sparkslawpllc.com**

**COUNSEL FOR DEFENDANT JOE LOWDER**

DATED, this the 23rd day of August, 2022.

>                    */s/ Ron L. Woodruff*
>                    Ron L. Woodruff

STATE OF MISSISSIPPI

COUNTY OF Lafayette

PERSONALLY came and appeared before me, the undersigned authority in and for the aforesaid jurisdiction, the within named TATIANA (TANYA) SHERMAN, who, after being first duly sworn, states under oath that the facts contained in the above and foregoing FIRST AMENDED COMPLAINT are true and correct as stated therein.

*Tatiana Sherman*
TATIANA (TANYA) SHERMAN

GIVEN under my hand and official seal of office on this the 27 day of June, 2022.

(SEAL)

NOTARY PUBLIC

My Commission Expires: 7/30/2024