# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**TATIANA SHERMAN**                                                                             **PLAINTIFF**

**V.**                            **CIVIL ACTION NO.: 1:21-CV-00190-GHD-DAS**

**ITAWAMBA COMMUNITY COLLEGE,**
**JOE LOWDER, TZER NAN WATERS, and**
**DR. JAY ALLEN**                              **DEFENDANTS**

## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COME NOW** Defendants Itawamba Community College ("ICC"), Tzer Nan Waters ("Waters"), and Dr. Jay Allen ("Allen") (collectively "these Defendants"), by and through counsel of record and pursuant to F.R.C.P. 56 and L.U.Civ.R. 7(b)(4), and respectfully submit their *Memorandum Brief in Support of Motion for Summary Judgment*, as follows:

### I. UNDISPUTED MATERIAL FACTS

**A. SUMMARY OF FACTS**

Plaintiff brings this employment discrimination action against ICC and others, alleging that her First Amendment rights were violated when she was terminated in retaliation for reporting criminal acts by her superiors connected to workforce training funds. On the contrary, Plaintiff was non-renewed because of her inability to collaborate with fellow employees, colleagues, and supervisors, and her constant rejection of her superior's efforts to improve her job performance.

As evidenced by her Performance Improvement Plan ("PIP"), and six-month updates and reviews, Plaintiff consistently underperformed and failed to evidence improvement despite a clear and feasible written improvement plan that she rejected. *See* Exhibit A – *Performance Improvement Plan (ICC Sherman 2-000065-67)*[1]; Exhibit B – *September 5, 2019 Performance*

---

[1] Deficiencies noted in the PIP included: (1) "Quotes not worked on collaboratively, shared in a timely manner, not always accurate or detailed," (2) "Proper tracking of documentation and lateness of checks to

*Improvement Plan Update (ICC Sherman 000004)*; Exhibit C – *December 18, 2019 Performance Improvement Plan Review (ICC Sherman 000005-16)*[2]; Exhibit D – *Performance Evaluation Form (ICC Sherman 2-000060-64)*. She pushed back on every reasonable effort to give her an opportunity to improve her declining performance, was not receptive to feedback, and deflected blame to others.[3] *See* Exhibit E – *March 4, 2020 Memo (ICC Sherman 000026)*. Her speech and communications were directly related to her job duties and job functions and were not protected speech under *Garcetti*. It was only because of the information she learned on the job that her speech was even made possible, and her communications, emails and text messages related to her job and work-related conversations with her peers. Since her speech was internal, related to, and arose out of information she learned through her employment, it was within the scope of her job duties and unprotected for First Amendment purposes.

Plaintiff completed her employment agreement as offered and was not offered a new employment agreement because of personal grievances about her superiors coupled with her subpar performance, not because of any effort to report a crime. *See* Exhibit F – *May 24, 2021 Allen Letter (ICC Sherman 000023)*. Plaintiff was placed on administrative leave with pay through June 30, 2021, at which time her employment with ICC terminated. *Id*.

---

companies," (3) "Often relies on email when a conversation could be more clear and effective," (4) "You have not been receptive to feedback," (5) "Often questions directives from Dean/Director and does not accept direction without a prolonged push-back in different forms," and (6) "Would often prefer not to collaborate whether with the staff or departments."

[2] Deficiencies noted in Review include: (1) "Would often prefer not to collaborate whether with staff or departments," (2) "Quotes not worked on collaboratively, shared in a timely manner, not always accurate or detailed," (3) "Proper tracking of documentation and lateness of checks to companies," (4) "Clear and effective communication with team," (5) "You have not been receptive to feedback," and (6) "Often questions directives from Dean/Director and does not accept direction without a prolonged push-back in different forms."

[3] Exhibit C at ICC-Sherman 000014 ("Mrs. Sherman has not received feedback well, and deflects blame on others. When concerns were pointed out, while she acknowledged the issues, she did not take responsibility for the issues, often she countered with how others involved in the process were to be blamed as well.")

B. **PLAINTIFF'S EMPLOYMENT WITH ICC**

Plaintiff began her employment with ICC in 2003 as a residence hall director, before becoming a dislocated worker coordinator in 2004 and a workforce project manager in 2005. In 2018, Plaintiff became the Manufacturing Extension Partnership Coordinator, taking on the responsibilities of that title in addition to her responsibilities as workforce project manager. New duties were added to her job description, including maintenance of proper records, data collection and a reporting system consistent with guidelines of the Mississippi Community College Board. *See* Exhibit G – *Sherman Job Description (ICC Sherman 000020-21)*. At all material times, Plaintiff was an at-will employee.

C. **WORKFORCE TRAINING REIMBURSEMENT DOCUMENTATION**

On several occasions during 2017, 2018 and 2019, Plaintiff voiced her disagreement with the manner in which reimbursement was made for workforce training funds, in meetings, in emails, and through text messages to her superiors. *See* Exhibit H – *April 5, 2019 Response to Performance Evaluation*. She made numerous complaints centered on sufficiency and verification of data required by the Mississippi Community College Board ("MCCB") for training reimbursements.

D. **PERFORMANCE IMPROVEMENT PLAN**

After she was not promoted to Director of the workforce project, Plaintiff's complaints intensified further after she was given a performance evaluation on March 8, 2019, with six-month updates. *See* Exhibits A, B, and C. At and before this time, Plaintiff's duties and responsibilities included (1) maintaining a current working knowledge of state guideline for reimbursement of workforce training funds, (2) confirming proper payment and reimbursement from the MCCB under its guidelines, (3) ensuring accuracy of training project files under the MCCB standards and all guidelines for yearly audits, and (4) working effectively with Accountability and Information

Data Specialists to ensure all workforce training project documentation complied with those standards and guidelines. *See* Exhibit F.

## II. CLAIMS ASSERTED BY PLAINTIFF

Plaintiff alleges the following causes of action against these Defendants in her *First Amended Complaint*:

1. **First Amendment Violation:** Plaintiff claims her First Amendment right to freedom of speech was violated when she was non-renewed. She asserts that her speech at all times was not part of her job but was on matters of public concern. Doc. 32 at p. 12, ¶29, Count V.

2. **Retaliation:** Plaintiff claims she was the victim of unlawful retaliation because she complained about criminal acts committed by her employer for which she was placed on a PIP and ultimately non-renewed. *Id*. at p. 11, ¶29, Count I

3. **Malicious Interference:** Plaintiff claims she was terminated as a result of malicious interference with her employment, causing her to suffer emotional distress. *Id*. at pp. 11-12, ¶29, Count IV.

4. ***McArn* Claim:** Plaintiff asserts state law claims against these Defendants under *McArn* on the ground that she was non-renewed because she reported criminal acts on the part of her employer and its employees. *Id*. at p. 11, ¶29, Count II.

5. **Whistleblower Act Claim:** Plaintiff claims that her employer violated the Mississippi Whistleblower Act, MISS. CODE ANN. §25-9-73, *et seq.*, which allows public employees to sue employers that retaliate against them for providing information to any state investigative body. *Id*. at p. 11, ¶29, Count III.

### III. ARGUMENT AND AUTHORITIES

**A. THESE DEFENDANTS DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS.**

Plaintiff's civil action based on an alleged violation of the First Amendment to the United States Constitution is barred under *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006), since her speech at all material times was not protected speech but was employee speech pursuant to and within the scope of her official duties as an employee of ICC. Plaintiff has no First Amendment cause of action based on her employer's reaction, if any, to her speech. Plaintiff's claim of First Amendment violation is premised on the fallacy that ICC and Waters did something wrong, illegal, or in some way unlawful, and that Plaintiff was terminated for reporting it. Because these Defendants followed Mississippi law and did nothing illegal, they could not have taken, and did not take, any adverse employment action related to Plaintiff for such reporting. They are entitled to qualified immunity as a matter of law.

Plaintiff's speech in this case was pursuant to the duties for which she was employed and owed its existence to her professional responsibilities as a public employee. There was no infringement on the liberties she might have enjoyed as a private citizen. Her speech was related to her job duties, and her activities undertaken in the course of performing her job were activities pursuant to official duties. *Nixon v. City of Houston*, 511 F. 3d 494, 497-501 (5th Cir. 2007). When analyzing a plaintiff's role as a speaker, federal courts have consistently considered (a) the internal versus external nature of the speech, and (b) whether the subject matter concerned the plaintiff's employment. While a formal job description may be relevant, it is not dispositive, and does not deflect from or minimize a factual determination that the plaintiff's conducting the task is within her professional duties for First Amendment purposes. A factually analogous set of facts was addressed in Corn v. Mississippi Dept. of Public Safety, 54 F. 3rd 268, 276-78 (5th Cir. 2020):

[I]n the course of performing [their] employment, Plaintiffs reported to NHTSA in the context of falsified claims. … [I]t appears that Plaintiffs' job duties are closely related to the function of reporting falsified claims, similar to the "ghost ticketing" investigation. … There is no meaningful distinction between Plaintiffs' and NHTSA's communicating about the "ghost ticket" investigation versus their ordinary communications with regard to falsified claims involving state troopers. Arguably, by virtue of their employment only, Plaintiffs learned of the investigation into the state trooper misconduct known as "ghost ticketing," i.e., the speech may have resulted from Plaintiffs' special knowledge gained as MDPS employees. Given the close relation between the allegations of Plaintiffs' job duties in evaluating false claims of state troopers and "ghost ticket" reporting, we conclude that Plaintiffs' alleged speech fell within the scope of their duties and that they have failed to plead otherwise.

*Corn v. Mississippi Dept. of Public Safety*, supra at 276-278.

The core inquiry in this context is whether Plaintiff's expressions were made pursuant to one of the numerous duties for which she was employed. Stated differently, the question is whether Plaintiff performed this activity in the course of carrying out her official duties. Her comments, speech and statements made in the course of performing her job were not and are not protected under the First Amendment. She made all of her comments internally, directed to those who supervised her, during work hours, and the subject matter of her speech concerned the manner of her employment. She was speaking pursuant to her job duties. *Elizondo v. Parks*, 431 Fed. Appx. 299, 300 (5th Cir. 2011); *Williams v. Dallas Indep. Sch. Dist.,* 480 F.3d 689 (5th Cir. 2007); *Garcetti*, 547 U.S. at 421,424. *Williams v. Dallas Indep. Sch. Dist.* provides guidance on the analysis and inevitable conclusion that Plaintiff here was speaking pursuant to her "official duties." In that case the Fifth Circuit in defining when an employee is speaking pursuant to her official duties noted that "a formal job description is not dispositive, . . . nor is speaking on the subject matter of one's employment." Id. at 692 (citing *Garcetti*, 126 S. Ct. at 1959, 1961). The Fifth Circuit concluded that speech required by one's position as an employee was not protected by the First Amendment. It reasoned that the speech at issue was not required by Williams' job responsibilities and that "[*a]ctivities undertaken in the course of performing one's job are activities*

{D2084995.1}                                                          6

*pursuant to official duties.*" Id. at 693-94. Applying the *Williams* rationale, these Defendants did not violate Plaintiff's First Amendment speech rights because her speech was not protected.

B. **PLAINTIFF'S TERMINATION WAS NOT THE RESULT OF UNLAWFUL RETALIATION.**

Plaintiff's claim of unlawful retaliation against these Defendants is barred as a matter of law based on the doctrine of qualified immunity. Plaintiff alleges that she was separated from her employment with ICC in 2021 in retaliation for complaining about illegal acts being committed by her employer. She likewise alleges that she was placed on a PIP for these complaints. Plaintiff purportedly brings her retaliation claim under 42 U.S.C. §1983.

On the contrary, a performance improvement plan is non-disciplinary training that does not materially impact an employee's compensation, terms, conditions or privileges of employment and is not an adverse employment action for purposes of a Title VII retaliation claim. Merely being instructed to follow the requirements of a PIP does not constitute an adverse employment action in the retaliation context. "[N]egative performance evaluations, standing alone, cannot constitute an adverse employment action." *Lipovsky v. Vilsack*, 2016 U.S. Dist. LEXIS 124805, at *816 (N.D. Miss. 2016)(Brown, J.); *Hardy v. Nissan N. Am.*, 2021 U.S. Dist. LEXIS 252836 (S.D. Miss. 2021) ("An employer's decision to place an employee on a performance improvement plan is not an adverse employment action.") (citing *Walsh v. Fort Bend Indep. Sch. Dist.*, 941 F. 2d 818, 824 (5th Cir. 2019)).

When a public employee raises complaints or concerns up the chain of command at her workplace about her job duties, her speech is undertaken in the course of performing her job and is not protected under the First Amendment. Plaintiff's §1983 claim for retaliation in violation of her First Amendment rights is predicated on her speech as a public employee and not speech on a matter of public concern. *Cf. Corn v. MDPS*, at 276-78 (speech closely related to Plaintiff's job

duties not protected). As provided above, Plaintiff's speech was not protected. Therefore, Plaintiff's termination was not in retaliation pursuant to 42 U.S.C. §1983 and Title VII.

### C. THESE DEFENDANTS DID NOT MALICIOUSLY INTERFERE WITH PLAINTIFF'S EMPLOYMENT.

Plaintiff's claim that she was terminated unlawfully and as a result of malicious interference with her employment is barred as a matter of law. *See Jones v. Miss. Valley State Univ.*, 2021 U.S. Dist. LEXIS 228201, *20-23 (N.D. Miss. 2021). A claim for malicious or tortious interference with employment is treated the same as a claim for tortious interference with contract under Mississippi law. *Guest-White v. Checker Leasing, Inc.*, 2016 U.S. Dist. LEXIS 17066, 2016 WL 595407, at *5 (N.D. Miss. Feb. 11, 2016). To establish a claim of tortious interference with contract, Plaintiff must show:

(1) that the acts were intentional and willful;

(2) that they were calculated to cause damage to the plaintiff in his lawful business;

(3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause (which constitutes malice); and

(4) that actual damage and loss resulted.

*Protective Serv. Life Ins. Co. v. Carter*, 445 So.2d 215, 217 (Miss. 1983).

A supervisor is privileged to interfere with an employee's employment contract unless the supervisor's actions are taken in bad faith. *Wigginton v. Washington Cnty.*, 2013 U.S. Dist. LEXIS 86875, 2013 WL 3157565, at *9 (N.D. Miss. June 20, 2013). In *Pegues v. Mississippi State Veterans Home*, Senior District Judge Mills expressed extreme reluctance "to conclude that the malicious interference tort was intended to serve as a duplicate state law remedy for cases where an employee is alleged to have acted with a motivation already prohibited by federal anti-discrimination laws," and that "the malicious interference cause of action was simply not designed

to deal with a subject matter as delicate and complex as workplace discrimination." 2017 U.S. Dist. LEXIS 121242, 2017 WL 3298684, at *4-5 (N.D. Miss. Aug. 2, 2017).

As in *Pegues*, these Defendants respectfully suggest that this Court should be skeptical regarding the overuse of the malicious interference tort in employment discrimination and retaliation cases, and that this Court should dismiss such claims made against them by Plaintiff.

**D. PLAINTIFF'S CLAIMS FOR EMOTIONAL DISTRESS ARE BARRED.**

Plaintiff's state law claims against these Defendants for emotional distress and emotional injury are barred by the exclusive remedy provision of the Mississippi Workers' Compensation Act, where connected to her employment and a result of some untoward event that occurred on the job. *See McElveen v. Croft Metals, Inc.*, 915 So. 2d 14, 19 (Miss. 2005) ("Under appropriate circumstances, an employee may be compensated for mental or psychological injury unaccompanied by physical trauma. … The mental injury must be caused by some unusual occurrence or untoward event in order to be compensable. [T]he question becomes whether this mental injury was connected to the employment and was a result of some untoward event that occurred on the job." )(internal citations omitted); *See also Sawyer v. Dependents of Head,* 510 So. 2d 472 (Miss. 1987) ("Liability cannot be imposed under both common law and the Mississippi Workers' Compensation Act, as entitlement to one excludes the other.")

An employee is either injured while acting in the course and scope of her employment thereby making the employer liable under the Mississippi Workers' Compensation Act, or she was injured while not acting in the course and scope of his employment thereby possibly rendering the employer liable under common law negligence liability. For an employee to succeed under both theories is contrary to the intent of the Act. This is consistent with the exclusive remedy provision of the Act, set forth in MISS. CODE. ANN. § 71-3-9 (1990), which provides in part that "the liability

of an employer to pay compensation shall be exclusive and in place of all other liability of such employer…"

In this case, Plaintiff's alleged emotional distress was incurred as a result of actions taken during her employment with ICC. Therefore, Plaintiff is barred from recovering from ICC for said distress pursuant to Miss. Code Ann. §71-3-9.

### E.  PLAINTIFF'S *MCARN* CLAIMS ARE BARRED.

Plaintiff's state law claims against these Defendants under *McArn* are barred as a matter of law under the discretionary function immunity provision of the Mississippi Tort Claims Act. Plaintiff alleges that she was separated from employment because she reported illegal acts on the part of her employer, a claim that is based on the *McArn* exception to the employment at-will doctrine in this state. But, on the contrary, Plaintiff's emails, reports, and communications at issue in this case reflect her personal grievances about her superiors rather than an effort to report a crime or illegal acts of her employer as required by Mississippi law. See Exhibits A, B, C, D and I (Excerpts from December 12, 2022 Deposition of Plaintiff, Tatiana Sherman), and *Rushing v. Mississippi Dept. of Child Prot. Services,* 2022 U.S. App. LEXIS 7797 (5th Cir. 2022) (finding *McArn*'s public policy exception to Mississippi's at-will employment doctrine did not apply where emails from Plaintiff social worker supervisor "to the [Child Protective Services] Commissioner shortly before her firing reflect her personal grievances about her supervisors rather than an effort to report a crime as required by Mississippi law.").

### F.  PLAINTIFF'S WHISTLEBLOWER CLAIMS ARE BARRED.

Plaintiff's claims against these Defendants under the Mississippi Whistleblower Act are barred as a matter of law. The Mississippi Whistleblower Protection Act allows public employees to sue employers that retaliate against them for providing information to any state investigative

body. MISS. CODE ANN. §25-9-171 and §25-9-173. No such retaliation has been shown, and the elements of such claim are lacking in this case.

Plaintiff was not terminated because she exercised her First Amendment right to free speech or because she was a whistleblower within the meaning of the Mississippi Whistleblower Protection Act. On the contrary, Plaintiff was non-renewed following her placement on a PIP that was a non-disciplinary training process which did not materially impact her compensation, terms, conditions or privileges of employment, and was not an adverse employment action. She received negative performance evaluations that, standing alone, cannot constitute an adverse employment action. *See Rushing v. Mississippi Dept. of Child Prot. Services*, 2022 U.S. App. LEXIS 7797 (5th Cir.2022). See Exhibits A, B, C, D and I (Excerpts from December 12, 2022 Deposition of Plaintiff, Tatiana Sherman). Therefore, Plaintiff's whistleblower claims must be dismissed against these Defendants.

### IV.     CONCLUSION

Plaintiff's federal and state claims against these Defendants are without merit and should be dismissed in the absence of a competent showing that there is a genuine issue of material fact with respect to liability for any First Amendment violation, retaliation, malicious interference, reporting of criminal acts which proximately caused Plaintiff's non-renewal, and violation of the Mississippi Whistleblower Act, for none of which Plaintiff has shown any basis for imposing liability as a matter of law. Moreover, these Defendants respectfully submit that there is no basis for the Court to conclude that the nonrenewal of Plaintiff Sherman "so lacked a basis in fact that [the nonrenewal decision] was arbitrary, capricious, or taken without professional judgment." *State of Texas By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker,* 142 F.3d 813, 819 (5th Cir.1998). In this case, that

"reasonable minds could disagree on the propriety of [Plaintiff's nonrenewal] is insufficient to defeat a public official's qualified immunity" under these circumstances. *Lewis v. Univ. of Texas Med. Branch at Galveston,* 665 F.3d 625, 631 (5th Cir.2011). Based on the above, these Defendants submit that their actions as individual Defendants were not objectively unreasonable in light of clearly established law, and that, accordingly, qualified immunity shields them from liability based on Plaintiff's Sherman's federal claims.

**RESPECTFULLY SUBMITTED,** this the 30th day of May, 2023.

**ITAWAMBA COMMUNIT COLLEGE,
TZER NAN WATERS, AND DR. JAY ALLEN,
DEFENDANTS**

BY: /s/ *Benjamin E. Griffith*
BENJAMIN E. GRIFFITH, MS BAR NO. 5026

**GRIFFITH LAW FIRM**
Post Office Box 2248
Oxford, Mississippi 38655
Phone: (662) 402-3133
Fax: (866) 493-4220
ben@glawms.com

## CERTIFICATE OF SERVICE

I, Benjamin E. Griffith, hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

THIS the 30th day of May, 2023.

/s/ *Benjamin E. Griffith*
OF COUNSEL