# Tatiana Sherman v. Itawamba Community College, et al.

## Joe Lowder

## May 3, 2023

All depositions & exhibits are available for downloading at
<<www.brookscourtreporting.com>>
Please call or e-mail depo@brookscourtreporting.com if you need a
**Username** and **Password.**



**Mississippi - Louisiana - Tennessee - New York**
**1-800-245-3376**

EXHIBIT "G"

Joe Lowder 5/3/2023

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION


TATIANA (TANYA) SHERMAN

                                                    PLAINTIFF


V.              CIVIL ACTION NO. 1:21-CV-190-GHD-DAS


ITAWAMBA COMMUNITY
COLLEGE, JOE LOWDER, TZER
NAN WATERS, AND DR. JAY
ALLEN

                                                    DEFENDANTS



            DEPOSITION OF JOE LOWDER


    Taken at the instance of the Plaintiff via Zoom at
        Phelps Dunbar, 4270 I-55 North, Jackson,
            Mississippi 39201, on Wednesday,
                    May 3, 2023,
             beginning at 12:04 p.m.








                REPORTED BY:

        ROBIN G. BURWELL, CCR #1651

Joe Lowder 5/3/2023

```
 1      APPEARANCES:

 2

 3           RON L. WOODRUFF, ESQ.(via Zoom)
             Waide & Associates, P.A.
 4           332 N. Spring Street
             Tupelo, Mississippi 38802-1357
 5           woodruff@waidelaw.com

 6

                    COUNSEL FOR PLAINTIFF
 7

 8

             DANIEL H. SPARKS, ESQ.
 9           Sparks Law Firm, PLLC
             Post Office Box 2610
10           Oxford, Mississippi 38655
             daniel@sparkslawpllc.com
11

12           BENJAMIN E. GRIFFITH, ESQ.(via Zoom)
             Griffith Law Firm
13           Post Office Box 2248
             Oxford, Mississippi 38655
14           ben@glawms.com

15

             D. MICHAEL HURST, JR., ESQ.
16           Phelps Dunbar
             4270 I-55 North
17           Jackson, Mississippi 39201
             mike.hurst@phelps.com
18

19                  COUNSEL FOR DEFENDANTS

20

21

22      ALSO PRESENT VIA ZOOM: Tatiana Sherman

23

24

25
```

Joe Lowder 5/3/2023

1                           INDEX

2     Style........................................1

3     Appearances.................................2

4     Index    ...................................3

5     Certificate of Deponent  .................32

6     Certificate of Court Reporter ............33

7                        EXAMINATIONS

8     Examination By Mr. Woodruff ...............4

9     Examination By Mr. Sparks ................30

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Joe Lowder 5/3/2023

```
 1                    JOE LOWDER,
 2   having been first duly sworn, was examined and
 3   testified as follows:
 4              MR. SPARKS:  I'm going to interject just
 5   briefly for the record before we begin that I have
 6   stated for counsel that my client will be
 7   asserting his Fifth Amendment privilege to any
 8   questions other than demographic.  Anything
 9   substantive he is on advice of counsel asserting
10   his Fifth Amendment, so just wanted to go ahead
11   and get that said to start with.
12              MR. WOODRUFF:  Sounds good.  Everybody
13   ready?
14              MR. SPARKS:  Yes.
15              THE WITNESS:  Yes.
16   EXAMINATION BY MR. WOODRUFF:
17        Q.   Please state your full name for the
18   record.
19        A.   Joseph Craig Lowder.
20        Q.   And what is your current home address?
21        A.   309 Park Glen Drive, Mount Juliet,
22   Tennessee 37122.
23        Q.   And your phone number?
24        A.   (901)240-4060.
25        Q.   Are you currently employed?
```

Joe Lowder 5/3/2023

```
 1        A.   Yes.

 2        Q.   And where do you work at?

 3        A.   AbbVie.

 4        Q.   I'm sorry?

 5        A.   AbbVie.

 6        Q.   How long have you worked there?

 7        A.   Two years.

 8        Q.   And what is your title or position?

 9        A.   Specialty representative.

10        Q.   And where did you work before that?

11        A.   Itawamba Community College.

12        Q.   And how -- and during what period of

13   time did you work at Itawamba Community College?

14        A.   November of 2015 to May of 2021.

15        Q.   And did you leave voluntarily or

16   involuntarily?

17        A.   Voluntarily.

18        Q.   There was no threat of termination or

19   anything when you -- you just turned in your

20   resignation and moved to another position?

21             THE WITNESS:  Can I answer that, Daniel?

22             MR. SPARKS:  Yes.

23             MR. WOODRUFF:  Yeah, Daniel, how do you

24   want to have -- do you want him to pause for a

25   second to give you chance to -- how you want to do
```

Joe Lowder 5/3/2023

```
 1   this?
 2             MR. SPARKS:  Yeah, that's fine.  I'll
 3   just -- yeah, just take a breath after the
 4   question has been answered and I will step in if I
 5   need to.  Thank you.
 6             MR. WOODRUFF:  Okay.  You mean after the
 7   question's asked?
 8             MR. SPARKS:  That's correct.
 9             MR. WOODRUFF:  Okay.  Sounds good.
10        Q.   (By Mr. Woodruff)  What is your highest
11   level of education?
12        A.   Doctorate.
13        Q.   And where did you get your doctorate
14   in -- where did you get your doctorate and what is
15   it in?
16        A.   College of William and Mary.
17        Q.   In?
18        A.   Educational policy planning and
19   leadership.
20        Q.   And what year did you get your
21   doctorate?
22        A.   2015.
23        Q.   What are director projects?
24             MR. SPARKS:  Would assert at this point.
25             THE WITNESS:  Yeah, on advice of
```

Joe Lowder 5/3/2023

```
 1    counsel, I assert my Fifth Amendment privilege.
 2        Q.   (By Mr. Woodruff)  Isn't it true in --
 3    after you -- I'm sorry.  Isn't it true that
 4    director of projects are projects that are so
 5    important to the college that the director is
 6    supposed to handle those?
 7             MR. SPARKS:  Assert.
 8             THE WITNESS:  On advice of counsel, I
 9    assert my Fifth Amendment privilege.
10        Q.   (By Mr. Woodruff)  Isn't it true that
11    after you became -- came to work at Itawamba
12    Community College you assigned the five director
13    projects to Tatiana Sherman?
14             MR. SPARKS:  Assert.
15             THE WITNESS:  On advice of counsel, I
16    assert my Fifth Amendment privilege.
17        Q.   (By Mr. Woodruff)  In 2018, did you
18    change Ms. Sherman's job duties to include being
19    in charge of the MEP project?
20             MR. SPARKS:  Assert.
21             THE WITNESS:  On advice of counsel, I
22    assert my Fifth Amendment privilege.
23        Q.   (By Mr. Woodruff) And are you aware that
24    at the other community college that have MEP
25    projects that the director there is at a director
```

Joe Lowder 5/3/2023

```
 1    level position?
 2            MR. SPARKS:  Objection, not within his
 3    knowledge.
 4            MR. WOODRUFF:  How do you know what his
 5    knowledge is, Mr. Crane{sic}?
 6            MR. SPARKS:  Well, you've asked him what
 7    other community colleges do.
 8            MR. WOODRUFF:  Well, I know, but -- you
 9    know, he can tell me it's not in his knowledge --
10    I mean, I can't -- you can't testify for him.  You
11    can have him assert his Fifth Amendment right
12    against self-incrimination, but you can't tell him
13    how to answer a question.
14            THE WITNESS:  On advice of counsel, I
15    assert my Fifth Amendment privilege.
16       Q.   (By Mr. Woodruff)  Thank you.
17            Do you know Tatiana Sherman?
18       A.   Yes.
19       Q.   Other than -- well, strike that.
20            Was she -- did she work under you at
21    Itawamba Community College?
22            MR. SPARKS:  Assert.
23            THE WITNESS:  On advice of counsel, I
24    assert my Fifth Amendment privilege.
25       Q.   (By Mr. Woodruff)  And did you ever have
```

Joe Lowder 5/3/2023

```
 1    any issues dealing with her when you worked with
 2    her at Itawamba Community College?
 3              MR. SPARKS:  Assert.
 4              THE WITNESS:  On advice of counsel, I
 5    assert my Fifth Amendment privilege.
 6         Q.   (By Mr. Woodruff)  Have you ever looked
 7    at the job description -- at Ms -- I'm sorry,
 8    Ms. Tatiana -- Ms. Sherman's job description?
 9              MR. SPARKS:  Assert.
10              THE WITNESS:  On advice of counsel, I
11    assert my Fifth Amendment privilege.
12         Q.   (By Mr. Woodruff)  Do you know whether
13    or not in her job description it says that one of
14    her duties is to report illegal activity?
15              MR. SPARKS:  Assert.
16              THE WITNESS:  On advice of counsel, I
17    assert my Fifth Amendment privilege.
18         Q.   (By Mr. Woodruff)  Does ICC have a
19    progressive disciplinary policy?
20              MR. SPARKS:  Assert.
21              THE WITNESS:  On advice of counsel, I
22    assert my Fifth Amendment privilege.
23         Q.   (By Mr. Woodruff)  Did you follow the
24    progressive disciplinary policy in regards to
25    Tatiana Sherman?
```

Joe Lowder 5/3/2023

```
 1              MR. SPARKS:  Assert.
 2              THE WITNESS:  On advice of counsel, I
 3    assert my Fifth Amendment privilege.
 4         Q.   (By Mr. Woodruff)  Are you asserting
 5    that Ms. Sherman did not get along with coworkers?
 6              MR. SPARKS:  Assert.
 7              THE WITNESS:  On advice of counsel, I
 8    assert my Fifth Amendment privilege.
 9         Q.   (By Mr. Woodruff)  Can you tell me any
10    coworker that Ms. Sherman didn't get along with?
11              MR. SPARKS:  Assert.
12              THE WITNESS:  On advice of counsel, I
13    assert my Fifth Amendment privilege.
14         Q.   (By Mr. Woodruff)  Did you and/or
15    Ms. Waters instruct Emily Lawrence, Stacy Loden
16    and Sharon Claimer(phonetic) to remove billing
17    information and quotes from files about two days
18    prior to the MCCB audit and hide summary sheets
19    with billing statements --
20              MR. SPARKS:  Assert.
21         Q.   -- by replacing them with new summary
22    sheets without billing statements?
23              THE WITNESS:  On advice of counsel, I
24    assert my Fifth Amendment privilege.
25         Q.   (By Mr. Woodruff)  Has the state auditor
```

Joe Lowder 5/3/2023

```
 1    ever requested an audit from you concerning the
 2    investigation they did at ICC?
 3                MR. SPARKS:  Assert.
 4                THE WITNESS:  On advice of counsel, I
 5    assert my Fifth Amendment privilege.
 6        Q.   (By Mr. Woodruff)  Did you have a car
 7    accident in the spring of 2019 where you didn't
 8    have use of your car for a period of time?
 9                MR. SPARKS:  Assert.
10                THE WITNESS:  On advice of counsel, I
11    assert my Fifth Amendment privilege.
12        Q.   (By Mr. Woodruff)  Did you take your
13    personal car to ICC auto repair shop to have it
14    worked on?
15                MR. SPARKS:  Assert.
16                THE WITNESS:  On advice of counsel, I
17    assert my Fifth Amendment privilege.
18        Q.   (By Mr. Woodruff)  Do you remember how
19    long your car stayed at the shop?
20                MR. SPARKS:  Assert.
21                THE WITNESS:  On advice of counsel, I
22    assert my Fifth Amendment privilege.
23        Q.   (By Mr. Woodruff)  Do you recall using a
24    ICC car to drive from work to home during a period
25    of time where your car was in the ICC auto repair
```

Joe Lowder 5/3/2023

```
 1    shop?
 2              MR. SPARKS:  Assert.
 3              THE WITNESS:  On advice of counsel, I
 4    assert my Fifth Amendment privilege.
 5         Q.   (By Mr. Woodruff)  Did you pay ICC for
 6    the repairs they did to your car?
 7              MR. SPARKS:  Assert.
 8              THE WITNESS:  On advice of counsel, I
 9    assert my Fifth Amendment privilege.
10         Q.   (By Mr. Woodruff)  In December 2018, did
11    you inform Ms. Sherman she was going to receive a
12    negative performance evaluation that you needed to
13    put in writing?
14              MR. SPARKS:  Assert.
15              THE WITNESS:  On advice of counsel, I
16    assert my Fifth Amendment privilege.
17         Q.   (By Mr. Woodruff)  On May 8, 2019, did
18    you give Ms. Sherman a negative review --
19    performance review?
20         A.   On advice of counsel, I assert my Fifth
21    Amendment privilege.
22         Q.   Did you -- in May 8, 2019, did you also
23    put Ms. Sherman on a performance improvement plan?
24              MR. SPARKS:  Assert.
25              THE WITNESS:  On advice of counsel, I
```

Joe Lowder 5/3/2023

```
 1    assert my Fifth Amendment privilege.
 2         Q.   (By Mr. Woodruff)  Are you aware that
 3    Ms. Sherman submitted her appeal in writing
 4    regarding the PIP to you?
 5              MR. SPARKS:  Assert.
 6              THE WITNESS:  On advice of counsel, I
 7    assert my Fifth Amendment privilege.
 8         Q.   (By Mr. Woodruff)  Are you aware that
 9    her response included a 20-page rebuttal and about
10    100 pages of supporting documentation?
11              MR. SPARKS:  Assert.
12              THE WITNESS:  On advice of counsel, I
13    assert my Fifth Amendment privilege.
14         Q.   (By Mr. Woodruff)  Did you read her
15    20-page rebuttal with 100 pages of supporting
16    documentation?
17              MR. SPARKS:  Assert.
18              THE WITNESS:  On advice of counsel, I
19    assert my Fifth Amendment privilege.
20         Q.   (By Mr. Woodruff)  Do you recall meeting
21    with Ms. Sherman and Tim Senter at the ICC Belden
22    Center conference room on or about May 20th, 2019,
23    and you telling Ms. Sherman that, quote, I never
24    said you did not achieve professional goals?
25              MR. SPARKS:  Assert.
```

Joe Lowder 5/3/2023

```
 1                    THE WITNESS:  On advice of counsel, I
 2      assert my Fifth Amendment privilege.
 3           Q.   (By Mr. Woodruff)  On September 15,
 4      2019, did you meet with Ms. Sherman and present
 5      her a letter that stated she was improving but
 6      extended her performance improvement plan for
 7      another six months?
 8                    MR. SPARKS:  Assert.
 9                    THE WITNESS:  On advice of counsel, I
10      assert my Fifth Amendment privilege.
11           Q.   (By Mr. Woodruff)  In September 2019,
12      did you tell Ms. Sherman you were giving Waters
13      responsibility to follow up with the PIP?
14                    MR. SPARKS:  Assert.
15                    THE WITNESS:  On advice of counsel, I
16      assert my Fifth Amendment privilege.
17           Q.   (By Mr. Woodruff)  Are you aware that
18      Ms. Sherman sent a letter to you, Dr. Allen, Tim
19      Senter and copied Ms. Waters and the State Auditor
20      detailing illegal activity going on at ICC?
21                    MR. SPARKS:  Assert.
22                    THE WITNESS:  On advice of counsel, I
23      assert my Fifth Amendment privilege.
24           Q.   (By Mr. Woodruff)  On October 10, 2019,
25      did you meet with Mr. Water -- I'm sorry, with
```

Joe Lowder 5/3/2023

```
 1      Mr. Senter and Ms. Sherman where she presented
 2      additional documentation to show the invalidity of
 3      the PIP and the evaluation?
 4              MR. SPARKS:  Assert.
 5              THE WITNESS:  On advice of counsel, I
 6      assert my Fifth Amendment privilege.
 7          Q.   (By Mr. Woodruff)  In the spring of
 8      2020, Ms. Sherman was changed from a contract
 9      employee to an at-will employee.  Did you have any
10      involvement in that decision?
11              MR. SPARKS:  Assert.
12              THE WITNESS:  On advice of counsel, I
13      assert my Fifth Amendment privilege.
14          Q.   (By Mr. Woodruff)  Did Ms. Sherman ever
15      complain to you that the workforce training
16      program was engaged in double billing respective
17      to certain copies not engaged in furniture
18      manufacturing?
19              MR. SPARKS:  Assert.
20              THE WITNESS:  On advice of counsel, I
21      assert my Fifth Amendment privilege.
22          Q.   (By Mr. Woodruff)  Did you, in
23      response -- I'm sorry.  In response to Ms. Sherman
24      telling you about double billing, did you tell
25      Ms. Sherman, they will never know?
```

Joe Lowder 5/3/2023

```
 1              MR. SPARKS:  Assert.
 2              THE WITNESS:  On advice of counsel, I
 3     assert my Fifth Amendment privilege.
 4        Q.    (By Mr. Woodruff)  Did you ever tell
 5     Ms. Sherman that she was too much by the book?
 6              MR. SPARKS:  Assert.
 7              THE WITNESS:  On advice of counsel, I
 8     assert my Fifth Amendment privilege.
 9        Q.    (By Mr. Woodruff)  Did you ever tell
10     Ms. Sherman that she had previously fired -- you
11     had previously fired an employee for not doing as
12     he was told at Florida State?
13              MR. SPARKS:  Assert.
14              THE WITNESS:  On advice of counsel, I
15     assert my Fifth Amendment privilege.
16        Q.    (By Mr. Woodruff)  Did you -- during the
17     time you were at ICC, other than the performance
18     evaluation you gave to Ms. Sherman in 2019, did
19     you give any other employee under you a -- a
20     performance evaluation?
21              MR. SPARKS:  Assert.
22              THE WITNESS:  On advice of counsel, I
23     assert my Fifth Amendment privilege.
24        Q.    (By Mr. Woodruff)  Did you ask
25     Ms. Sherman to see if she can get a 25 -- $250,000
```

Joe Lowder 5/3/2023

```
 1    investment from her husband for a microbrewery you

 2    were trying to start?

 3            MR. SPARKS:  Assert.

 4            THE WITNESS:  On advice of counsel, I

 5    assert my Fifth Amendment privilege.

 6        Q.   (By Mr. Woodruff)  Were you ever

 7    interviewed by the investigators from the State

 8    Auditor's office?

 9            MR. SPARKS:  Assert.

10            THE WITNESS:  On advice of counsel, I

11    assert my Fifth Amendment privilege.

12        Q.   (By Mr. Woodruff)  Were you aware that

13    Emily Lawrence told the investigator that she had

14    been instructed to falsify documentation in an

15    attempt to hide certain information from them?

16            MR. SPARKS:  Assert.

17            THE WITNESS:  On advice of counsel, I

18    assert my Fifth Amendment privilege.

19        Q.   (By Mr. Woodruff)  Were you aware that

20    Emily Lawrence was terminated shortly after she

21    informed them of that?

22            MR. SPARKS:  Assert.

23            THE WITNESS:  On advice of counsel, I

24    assert my Fifth Amendment privilege.

25        Q.   (By Mr. Woodruff)  Did you have any
```

Joe Lowder 5/3/2023

```
 1    involvement in the termination of Emily Lawrence?
 2              MR. SPARKS:  Assert.
 3              THE WITNESS:  On advice of counsel, I
 4    assert my Fifth Amendment privilege.
 5        Q.   (By Mr. Woodruff)  Did anyone assist you
 6    with the evaluation of Ms. Sherman that you issued
 7    her on March 9th, 2019?
 8              MR. SPARKS:  Assert.
 9              THE WITNESS:  On advice of counsel, I
10    assert my Fifth Amendment privilege.
11        Q.   (By Mr. Woodruff)  Did anybody assist
12    you in the evaluation you gave to Ms. Sherman in
13    2019?
14              MR. SPARKS:  Assert.
15              THE WITNESS:  On advice of counsel, I
16    assert my Fifth Amendment privilege.
17        Q.   (By Mr. Woodruff)  Have you ever read
18    MCCB and ICC workforce policies and procedures?
19              MR. SPARKS:  Assert.
20              THE WITNESS:  On advice of counsel, I
21    assert my Fifth Amendment privilege.
22        Q.   (By Mr. Woodruff)  Did you understand
23    MCCB and ICC workforce policy and procedures?
24              MR. SPARKS:  Assert.
25              THE WITNESS:  On advice of counsel, I
```

Joe Lowder 5/3/2023

```
 1    assert my Fifth Amendment privilege.
 2         Q.   (By Mr. Woodruff)  How many projects did
 3    you manage when you joined workforce development
 4    team in 2015?
 5              MR. SPARKS:  Assert.
 6              THE WITNESS:  On advice of counsel, I
 7    assert my Fifth Amendment privilege.
 8         Q.   (By Mr. Woodruff)  Can you name the
 9    projects that you managed once you came to work at
10    ICC in 2015?
11              MR. SPARKS:  Assert.
12              THE WITNESS:  On advice of counsel, I
13    assert my Fifth Amendment privilege.
14         Q.   (By Mr. Woodruff)  How long did you
15    manage those accounts that you -- if you managed
16    any accounts, how long did you manage them?
17              MR. SPARKS:  Assert.
18              THE WITNESS:  On advice of counsel, I
19    assert my Fifth Amendment privilege.
20         Q.   (By Mr. Woodruff)  Did you change the
21    format of the class role for Southern Motion
22    allowing them to submit documentation without
23    providing a start and end time for the classes?
24              MR. SPARKS:  Assert.
25              THE WITNESS:  On advice of counsel, I
```

Joe Lowder 5/3/2023

```
 1    assert my Fifth Amendment privilege.
 2         Q.   (By Mr. Woodruff)  If you did that, why
 3    did you do that?
 4              MR. SPARKS:  Assert.
 5              THE WITNESS:  On advice of counsel, I
 6    assert my Fifth Amendment privilege.
 7         Q.   (By Mr. Woodruff)  Did Ms. Sherman
 8    advise you not to make that change?
 9              MR. SPARKS:  Assert.
10              THE WITNESS:  On advice of counsel, I
11    assert my Fifth Amendment privilege.
12         Q.   (By Mr. Woodruff)  Did Ms. Sherman show
13    you the MCCB policy that requires a start and end
14    time to be listed?
15              MR. SPARKS:  Assert.
16              THE WITNESS:  On advice of counsel, I
17    assert my Fifth Amendment privilege.
18         Q.   (By Mr. Woodruff)  Were you aware that
19    ICC food service program was fully funded by the
20    federal government?
21              MR. SPARKS:  Assert.
22              THE WITNESS:  On advice of counsel, I
23    assert my Fifth Amendment privilege.
24         Q.   (By Mr. Woodruff)  Why did you seek
25    additional reimbursement from this program using
```

Joe Lowder 5/3/2023

```
 1    workforce state funds?
 2              MR. SPARKS:  Assert.
 3              THE WITNESS:  On advice of counsel, I
 4    assert Fifth Amendment privilege.
 5         Q.   (By Mr. Woodruff)  After Ms. Sherman
 6    told Waters that ICC food program was fraud and
 7    money laundering, did you or her decide to not
 8    reimburse this program in Fiscal Year 2019?
 9              MR. SPARKS:  Assert.
10              THE WITNESS:  On advice of counsel, I
11    assert Fifth Amendment privilege.
12         Q.   (By Mr. Woodruff)  Did you ever
13    recommend to charge individuals whatever they
14    could pay for program design to provide training
15    to Mississippi citizens in order to obtain an
16    entry-level job?
17              MR. SPARKS:  Assert.
18              THE WITNESS:  On advice of counsel, I
19    assert Fifth Amendment privilege.
20         Q.   (By Mr. Woodruff)  Did you make a
21    statement to treat these programs as your own
22    business and charge individuals whatever they
23    could pay?
24              MR. SPARKS:  Assert.
25              THE WITNESS:  On advice of counsel, I
```

Joe Lowder 5/3/2023

```
 1    assert my Fifth Amendment privilege.
 2         Q.    (By Mr. Woodruff)  Did you put
 3    individuals or participants in this program on a
 4    payment plan?
 5              MR. SPARKS:  Assert.
 6              THE WITNESS:  On advice of counsel, I
 7    assert Fifth Amendment privilege.
 8         Q.    (By Mr. Woodruff)  Were you aware that
 9    all of these programs were eligible from
10    reimbursement from the state?
11              MR. SPARKS:  Assert.
12              THE WITNESS:  On advice of counsel, I
13    assert Fifth Amendment privilege.
14         Q.    (By Mr. Woodruff)  Did you admit to
15    Nathan Mills that neither you or Waters knew what
16    was or was not eligible for reimbursement from the
17    workforce state funds?
18              MR. SPARKS:  Assert.
19              THE WITNESS:  On advice of counsel, I
20    assert Fifth Amendment privilege.
21         Q.    (By Mr. Woodruff)  Did Ashley
22    Furniture's maintenance manager make a complaint
23    to you about dealing with Ms. Waters?
24              MR. SPARKS:  Assert.
25              THE WITNESS:  On advice of counsel, I
```

Joe Lowder 5/3/2023

```
 1    assert Fifth Amendment privilege.
 2         Q.   (By Mr. Woodruff)  Did any other company
 3    complain about Ms. Waters?
 4         A.   On advice of counsel, I assert Fifth
 5    Amendment privilege.
 6         Q.   Did Tronox request Kelly McAnally to be
 7    their primary instructor and ask he -- ask that he
 8    replace Ms. Waters at their meeting training
 9    facility?
10              MR. SPARKS:  Assert.
11              THE WITNESS:  On advice of counsel, I
12    assert Fifth Amendment privilege.
13         Q.   (By Mr. Woodruff)  Did you tell Tim
14    Senter during Ms. Sherman's evaluation the goal
15    was to increase prices slowly for companies to
16    general revenue?
17              MR. SPARKS:  Assert.
18              THE WITNESS:  On advice of counsel, I
19    assert Fifth Amendment privilege.
20         Q.   (By Mr. Woodruff)  Did you explain to
21    Ms. Senter that you wanted to -- Mr. Senter that
22    you wanted to see what the company paid in the
23    past and use this information to create new prices
24    to make a profit?
25              MR. SPARKS:  Assert.
```

Joe Lowder 5/3/2023

```
 1                THE WITNESS:  On advice of counsel, I
 2      assert Fifth Amendment privilege.
 3           Q.   (By Mr. Woodruff)  Did you assign
 4      pricing for workforce class using Google search
 5      comparing them with private training fees?
 6                MR. SPARKS:  Assert.
 7                THE WITNESS:  On advice of counsel, I
 8      assert Fifth Amendment privilege.
 9           Q.   (By Mr. Woodruff)  Did you claim the
10      project managers had a responsibility to know the
11      training budget for each company?
12                MR. SPARKS:  Assert.
13                THE WITNESS:  On advice of counsel, I
14      assert Fifth Amendment privilege.
15           Q.   (By Mr. Woodruff)  Did you assign the
16      cost based on how much could be charged versus the
17      actual cost of the training?
18                MR. SPARKS:  Assert.
19                THE WITNESS:  On advice of counsel, I
20      assert Fifth Amendment privilege.
21           Q.   (By Mr. Woodruff)  Did you ever accuse
22      Ms. Sherman of not following the departmental
23      book?
24                MR. SPARKS:  Assert.
25                THE WITNESS:  On advice of counsel, I
```

Joe Lowder 5/3/2023

```
 1    assert Fifth Amendment privilege.
 2         Q.   (By Mr. Woodruff)  Was Ms. Sherman
 3    blocked from seeing workforce classes on her
 4    calendar?
 5              MR. SPARKS:  Assert.
 6              THE WITNESS:  On advice of counsel, I
 7    assert Fifth Amendment privilege.
 8         Q.   (By Mr. Woodruff)  Did you ever have to
 9    change the settings more than once at her request
10    to let her view the class schedule?
11              MR. SPARKS:  Assert.
12              THE WITNESS:  On advice of counsel, I
13    assert Fifth Amendment privilege.
14         Q.   (By Mr. Woodruff)  Was Ms. Sherman a
15    hard working project manager?
16              MR. SPARKS:  Assert.
17              THE WITNESS:  On advice of counsel, I
18    assert Fifth Amendment privilege.
19         Q.   (By Mr. Woodruff)  Could you describe or
20    could you state how many companies she represented
21    and name her major projects and programs?
22              MR. SPARKS:  Assert.
23              THE WITNESS:  On advice of counsel, I
24    assert Fifth Amendment privilege.
25         Q.   (By Mr. Woodruff)  Did you ever tell
```

Joe Lowder 5/3/2023

```
 1    Ms. Sherman she was doing an excellent job?
 2              MR. SPARKS:  Assert.
 3              THE WITNESS:  On advice of counsel, I
 4    assert Fifth Amendment privilege.
 5         Q.   (By Mr. Woodruff)  After Ms. Sherman was
 6    put on a performance improvement plan, did you
 7    take away the director accounts that you had given
 8    her when you first came to ICC?
 9              MR. SPARKS:  Assert.
10              THE WITNESS:  On advice of counsel, I
11    assert Fifth Amendment privilege.
12         Q.   (By Mr. Woodruff)  When you -- after you
13    put Ms. Sherman on the performance improvement
14    plan, did you take away the additional
15    responsibility of MEP manager director?
16              MR. SPARKS:  Assert.
17              THE WITNESS:  On advice of counsel, I
18    assert Fifth Amendment privilege.
19         Q.   (By Mr. Woodruff)  Were you aware that
20    Ms. Sherman served around 80 companies in her job?
21              MR. SPARKS:  Assert.
22              THE WITNESS:  On advice of counsel, I
23    assert Fifth Amendment privilege.
24         Q.   (By Mr. Woodruff)  Did you ever give
25    Ms. Sherman any feedback after you gave her a
```

Joe Lowder 5/3/2023

```
 1    negative evaluation in March 2019?
 2              MR. SPARKS:  Assert.
 3              THE WITNESS:  On advice of counsel, I
 4    assert Fifth Amendment privilege.
 5         Q.   (By Mr. Woodruff)  Six months later --
 6    around six months later, you told her that she was
 7    improving in documentation.  What did you base
 8    that decision on?
 9              MR. SPARKS:  Objection as to your
10    testifying and asking him to --
11              MR. WOODRUFF:  It says it right in the
12    document.
13              MR. SPARKS:  But I'm going to ask him to
14    assert, regardless.
15              MR. WOODRUFF:  Okay.
16              THE WITNESS:  On advice of counsel, I
17    assert my Fifth Amendment privilege.
18         Q.   (By Mr. Woodruff)  Did you inform
19    Ms. Waters that you were placing Ms. Sherman on a
20    PIP in March of 2019?
21              MR. SPARKS:  Assert.
22              THE WITNESS:  On advice of counsel, I
23    assert Fifth Amendment privilege.
24         Q.   (By Mr. Woodruff)  Isn't it true that at
25    the time you put Ms. Sherman on a PIP, Ms. Waters
```

Joe Lowder 5/3/2023

```
 1    had already been her supervisor for about four or
 2    five months?
 3                 MR. SPARKS:  Assert.
 4                 THE WITNESS:  On advice of counsel, I
 5    assert Fifth Amendment privilege.
 6         Q.    (By Mr. Woodruff)  Were you aware that
 7    Ms. Sherman administered the most projects
 8    annually for the workforce program?
 9                 MR. SPARKS:  Assert.
10                 THE WITNESS:  On advice of counsel, I
11    assert Fifth Amendment privilege.
12         Q.    (By Mr. Woodruff)  Were you aware that
13    she brought in the largest amount of money in her
14    capacity as a workforce management --
15                 MR. SPARKS:  Assert.
16         Q.    -- for the college?
17                 THE WITNESS:  On advice of counsel, I
18    assert Fifth Amendment privilege.
19         Q.    (By Mr. Woodruff)  .  Are you aware that
20    she was the longest serving project manager at the
21    college when you put her on a PIP?
22                 MR. SPARKS:  Assert.
23                 THE WITNESS:  On advice of counsel, I
24    assert Fifth Amendment privilege.
25         Q.    (By Mr. Woodruff)  Did you call
```

Joe Lowder 5/3/2023

```
 1      Ms. Sherman the enemy of the college after she
 2      wrote a letter to the State Auditor?
 3               MR. SPARKS:  Assert.
 4               THE WITNESS:  On advice of counsel, I
 5      assert Fifth Amendment privilege.
 6               MR. WOODRUFF:  Yeah, let me go off the
 7      record so I can talk to Ms. Sherman.  Let me see
 8      if I can figure out how to mute myself.  I think I
 9      can.
10               (Off the record.)
11               MR. SPARKS:  Okay.  Proceed.
12               MR. WOODRUFF:  Yes, sir.
13          Q.   (By Mr. Woodruff)  My first thing is, I
14      just want to clean up the record.  I think I
15      misspoke a few times and I said, "the PIP" and/or
16      "the performance was in May of 2019," and it was
17      in March of 2019.  I just want to correct the
18      record for that.  And I just have a couple of more
19      questions.
20               Were you indicted by a grand jury around
21      November of 2021?
22               MR. SPARKS:  Assert.
23               THE WITNESS:  On advice of counsel, I
24      assert Fifth Amendment privilege.
25          Q.   (By Mr. Woodruff)  Have you gone to
```

Joe Lowder 5/3/2023

```
 1    trial concerning that indictment yet?
 2              MR. SPARKS:  Assert.
 3              THE WITNESS:  On advice of counsel, I
 4    assert Fifth Amendment privilege.
 5         Q.   (By Mr. Woodruff)  That's all the
 6    questions I have.
 7              MR. SPARKS:  Ben?
 8              MR. GRIFFITH:  No questions.
 9    EXAMINATION BY MR. SPARKS:
10         Q.   Very briefly, Dr. Lowder.  When you
11    arrived at ICC, what was your title?
12         A.   It was director of workforce innovation,
13    or something like that.
14         Q.   Who made you aware of that job?
15         A.   Ms. Tatiana Sherman.
16         Q.   Who was your immediate supervisor upon
17    your arrival?
18         A.   Dr. David Cole.
19         Q.   Was he in charge of workforce?
20         A.   Yes, sir.
21         Q.   When did he leave?
22         A.   It was like seven or eight months after
23    I started, so maybe mid-2016.  Mid to late 2016,
24    maybe.
25         Q.   And when he left, who replaced him?  Who
```

Joe Lowder 5/3/2023

```
 1    took his role?
 2         A.    I did.
 3               MR. SPARKS:  That's all I have.
 4               MR. WOODRUFF:  All right.  I think we're
 5    done.
 6
 7               (Time Noted:  12:46 p.m.)
 8                    SIGNATURE/NOT WAIVED
 9
10    ORIGINAL:  MR. WOODRUFF, ESQ.
11    COPY:  MR. SPARKS, ESQ.
12    COPY:  MR. GRIFFITH, ESQ.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Joe Lowder 5/3/2023

```
 1              CERTIFICATE OF DEPONENT
 2   DEPONENT:  JOE LOWDER
     DATE:  May 3, 2023
 3   CASE STYLE:  TATIANA (TANYA) SHERMAN vs. ITAWAMBA
     COMMUNITY COLLEGE, JOE LOWDER, TZER NAN WATERS, AND
 4   DR. JAY ALLEN
     ORIGINAL TO:  MR. WOODRUFF, ESQ.
 5              I, the above-named deponent in the
     deposition taken in the herein styled and numbered
 6   cause, certify that I have examined the deposition
     taken on the date above as to the correctness
 7   thereof, and that after reading said pages, I find
     them to contain a full and true transcript of the
 8   testimony as given by me.
                 Subject to those corrections listed below,
 9   if any, I find the transcript to be the correct
     testimony I gave at the aforestated time and place.
10   Page      Line                    Comments
     ____      ____      _____
11   ____      ____      _____
     ____      ____      _____
12   ____      ____      _____
     ____      ____      _____
13   ____      ____      _____
     ____      ____      _____
14   ____      ____      _____
     ____      ____      _____
15   ____      ____      _____
     ____      ____      _____
16   ____      ____      _____
     ____      ____      _____
17
18          This the ____ day of _____, 2023.
19                              _____
                                JOE LOWDER
20   State of Mississippi
     County of _____
21
            Subscribed and sworn to before me, this the
22   _____ day of _____, 2023.
23   My Commission Expires:
24   _____   _____
25                                      Notary Public
```

Joe Lowder 5/3/2023

```
 1              CERTIFICATE OF COURT REPORTER
 2              I, Robin G. Burwell, Court Reporter and
 3    Notary Public, in and for the State of Mississippi,
 4    hereby certify that the foregoing contains a true
 5    and correct transcript of the testimony of JOE
 6    LOWDER, as taken by me in the aforementioned matter
 7    at the time and place heretofore stated, as taken by
 8    stenotype and later reduced to typewritten form
 9    under my supervision by means of computer-aided
10    transcription.
11              I further certify that under the authority
12    vested in me by the State of Mississippi that the
13    witness was placed under oath by me to truthfully
14    answer all questions in the matter.
15              I further certify that, to the best of my
16    knowledge, I am not in the employ of or related to
17    any party in this matter and have no interest,
18    monetary or otherwise, in the final outcome of this
19    matter.
20              Witness my signature and seal this the 9th
21    day of May, 2023.
22
23
                        ROBIN G. BURWELL, #1651
24                      CRR, RPR, CCR
      My Commission Expires:
25    April 6, 2025
```