IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TATIANA (TANYA) SHERMAN                                      PLAINTIFF

V.                                                NO: 1:21CV190-GHD-DAS

ITAWAMBA COMMUNITY COLLEGE,
JOE LOWDER, TZER NAN WATERS,
and DR. JAY ALLEN                                           DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is Defendants Itawamba Community College ("ICC"), Tzer Nan
Waters, and Dr. Jay Allen's motion for summary judgment. [88]. Defendant Joe Lowder has filed
a motion for joinder [90] requesting to join Defendants ICC, Waters, and Allen's motion for
summary judgment. Plaintiff Tatiana Sherman has responded in opposition to the present motions,
and upon due consideration, for the reasons set forth herein, the Court hereby grants Defendant
Lowder's motion for joinder [90] and denies Defendants ICC, Waters, Allen, and Lowder's motion
for summary judgment. [88].

### Factual and Procedural Background

Plaintiff Sherman began her employment with ICC in 2003 as a residence hall director. In
the year 2004 Sherman became a dislocated worker coordinator and later a workforce project
manager in 2005, all while maintaining her position as a residence hall director. Sherman
maintained the position of residence hall director for ICC until 2011. In 2018 Sherman also
became a manufacturing extension partnership coordinator, while also continuing her work as a
workforce project manager for ICC.

According to Sherman, she began reporting alleged fraud and wrongdoing around 2015,
beginning with reporting how ICC's workforce training logs at the company Southern Motion

1

were handled improperly. Sherman has alleged that employees at Southern Motion were being forced to sign ICC's workforce training logs stating that they had been trained when they had actually not been trained. Plaintiff Sherman further alleges that this was reported to Defendant Joe Lowder, who was the director of workforce innovation at ICC at the time, and Defendant Tzer Nan Waters.

Sherman, on several occasions during 2017, 2018, and 2019, voiced complaints to either Defendant Lowder, Defendant Waters, or both, that ICC was not in compliance with government regulations and that ICC was participating in fraud and misappropriation. Specifically, some of these complaints centered around the Workforce Training Program, which Sherman states was engaging in double billing with respect to certain manufacturing companies. Sherman states that ICC was receiving money from the state to operate the training for this program but billed the companies for the same training, thus receiving double the money. Sherman stated that these complaints and concerns continued but no action was ever taken by the Defendants to correct them.

In March of 2019, Plaintiff Sherman was placed on a Performance Improvement Plan ("PIP"). According to the PIP and its updates, Plaintiff underperformed and fell short as an employee in multiple different facets of her position at ICC. Plaintiff Sherman contends that the PIP reports and updates are untrue, and that she even remained as the director of multiple major projects. Later in September of 2019, Sherman and her attorney sent a letter outlining alleged illegalities taking place at ICC to Defendant Jay Allen, president of ICC; Tim Senter, director of human resources at ICC; Defendant Joe Lowder; and also copied the State Auditor. State Auditor's investigators conducted a raid of ICC on February 4, 2021, and Defendant Lowder was indicted later that year in November for fraud. Approximately three months after the State Auditor's raid, Defendant Jay Allen terminated Sherman's employment.

Plaintiff's complaint asserts five claims, however, Plaintiff Sherman consolidates these claims into four claims as stated in the response to the present motion. Plaintiff Sherman brings the following claims: 1. First Amendment Violation, 2. *McArn* Claim, 3. Mississippi Whistleblower Statute violation, and 4. malicious interference with employment.

### Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* "An issue of fact is material only if 'its resolution could affect the outcome of the action.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001);

3

*Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

## Discussion

The Court as an initial matter addresses Defendant Joe Lowder's motion to join [90] Defendants ICC, Tzer Nan Waters, and Dr. Jay Allen's motion for summary judgment and the accompanying brief in support of this motion. Plaintiff Sherman requests that the Court deny Defendant Lowder's motion for joinder but does not provide any argument or reasoning to support this position. The Court finds the reasons stated in Defendant Lowder's motion for joinder [90] to be compelling, and the Court sees no issue with granting Defendant Lowder's request to join the other named Defendants' motion for summary judgment. Thus, Defendant Lowder's motion for joinder is granted.

### I. First Amendment Violation

To establish a prima facie case of First Amendment retaliation, a plaintiff must show: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015). Defendants' summary judgment motion focuses on the first and

4

second elements of Plaintiff's prima facie case, arguing that there was no adverse employment action, and that Plaintiff spoke as an employee, not a citizen, when reporting the Defendants to the Mississippi State Auditor. Plaintiff Sherman has alleged that she was terminated by Defendant ICC and Defendant Allen at the direction or suggestion of Defendant Lowder and/or Defendant Waters, due to her reporting the Defendants' illegal activities, of which reporting was not part of her ordinary job duties, thus violating Plaintiff's First Amendment rights. Defendants have currently moved for summary judgment on Plaintiff's first amendment retaliation claim arguing that Plaintiff's speech in question was not protected but instead was employee speech pursuant to and within the scope of her official duties as a public employee of ICC.

It is well established that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). "Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people[.]'" *Lane v. Franks*, 573 U.S. 228, 134 S.Ct. 2369, 2377, 189 L.Ed.2d 312 (2014) (quoting *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419, 126 S.Ct. 1951 (citing *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

The Supreme Court in *Garcetti* created the rule that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer

5

discipline." *Id.* at 421, 126 S.Ct. 1951; *Caleb v. Grier*, 598 Fed.Appx. 227, 233 (5th Cir.2015). When a public employee engages in an activity required by his position or undertaken in the course of performing his job, his speech is within the purview of his "official duties." See *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007). "Formal job descriptions, although relevant, are not dispositive, as they 'often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate the conducting the task is within the scope of the employee's professional duties for First Amendment purposes.'" *Elizondo v. Parks*, 431 Fed.Appx. 299, 303 (5th Cir. 2011) (per curiam) (quoting *Garcetti*, 547 U.S. at 424–25, 421, 126 S.Ct. 1951). The inquiry before the court is a "practical one" and the controlling factor is whether "plaintiff's expressions were made pursuant to one of the numerous duties for which the plaintiff was employed." *Id.* (quoting *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951).

However, "[t]he First Amendment ... may still apply when the employees make statements relating to their public employment; the question 'is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.'" *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015) (quoting *Lane*, 134 S.Ct. at 2379). The Fifth Circuit has highlighted several relevant factors mentioned in *Garcetti* to consider in the free speech analysis, including "whether the employee expressed views inside the office or publicly," "the subject matter of the relevant communication," and "most importantly, whether or not the statements were made pursuant to an official duty." *Benes v. Puckett*, 602 Fed.Appx. 589, 593 (5th Cir. 2015) (per curiam) (citing *Garcetti*, 547 U.S. at 420–21, 126 S.Ct. 1951). "'Under *Garcetti*, we must shift our focus from the content of the speech to the role the speaker occupied when he said it.'" *Id.* (quoting *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008)).

6

Plaintiff Sherman has submitted her job description from ICC, along with her own testimony, to show that reporting fraud or illegal activity was not a part of her official duties as an employee of ICC. While a formal job description is not dispositive, it does provide guidance in deciding if the speech was part of the employee's official duties. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007). Plaintiff's job description states that her position is to report to the "Workforce development and Training Director and Dean of Economic and Community Services." [93-5 Ex. E]. The testimony of Plaintiff and the job description both suggest that Plaintiff Sherman's ordinary duties did not involve direct communication with the State Auditor to report illegal acts.

However, the Court finds that Plaintiff's reporting to an outside agency provides another method of analysis for this specific matter. Something the Court must consider is whether Plaintiff's complaint was made within the chain of command or to an outside actor, "such as a different government agency or the media." *Gibson v. Kilpatrick*, 773 F.3d 661, 670 (5th Cir. 2014). If "a public employee takes his job concerns to persons outside the workplace in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." *Id.* The Mississippi State Auditor was not within Plaintiff Sherman's chain of command and Plaintiff brought these issues up the chain of command for years before exiting the chain of command.

Even assuming that Plaintiff Sherman had a general duty to report ethical concerns within her position at ICC, that does not establish that doing so would be Plaintiff's "ordinary" duties. "Under *Lane*, a general job-imposed obligation to detect and prevent wrongdoing does not qualify as an employee's 'official duty' because 'such broad [obligations] fail to describe with sufficient detail the day-to-day duties of a public employee's job." *Anderson v. Valdez*, 913 F.3d 472, 477

7

(5th Cir. 2019) (quoting *Howell v. Town of Ball*, 827 F.3d 515, 523–24 (5th Cir. 2016). When reviewing the summary judgment evidence presented, it is not apparent that Plaintiff Sherman's ordinary or official duties included reporting believed illegal or fraudulent acts to the State Auditory, and thus, Plaintiff has offered competent summary judgment evidence demonstrating that she spoke as a citizen when she contacted the Mississippi State Auditor.

Defendants also argue that the Plaintiff has not demonstrated the element of showing that an adverse employment action took place. Defendants state that a performance improvement plan, similar to the one Plaintiff Sherman was placed on, is non-disciplinary training that does not materially impact the terms or conditions of her employment, and thus is not an adverse employment action. Defendants state that "negative performance evaluations, standing alone, cannot constitute an adverse employment action." *Lipovsky v. Vilsack*, 2016 U.S. Dist. LEXIS 124805, at *816 (N.D. Miss. 2016); *Hardy v. Nissan N. Am.*, 2021 U.S. Dist. LEXIS 252836 (S.D. Miss. 2021) ("An employer's decision to place an employee on a performance improvement plan is not an adverse employment action.") (citing *Walsh v. Fort Bend Indep. Sch. Dist.*, 941 F. 2d 818, 824 (5th Cir. 2019)). However, the Court finds that this argument need not be addressed, as Plaintiff Sherman was also terminated from her position, which constitutes an adverse employment action.

Defendants also argue that qualified immunity shields them from liability from Plaintiff's first amendment retaliation claim. As an initial matter, the Court notes that the individual defendants in this case are not being sued for civil damages and that ICC is not an individual defendant. However, due to the amount of briefing done by the parties on the matter, the Court will address the qualified immunity defense raised by the Defendants. Qualified immunity shields government officials from individual liability "so long as their actions could reasonably have been

thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). To overcome qualified immunity, a plaintiff must show: "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

Defendants argue that qualified immunity applies because they never violated Plaintiff's constitutional rights, but as discussed, Plaintiff overcomes summary judgment on that issue. Thus, the question remaining before the Court is whether the Defendants violated clearly established law when they terminated Plaintiff Sherman. A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11–12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (quoting *Reichle v. Howards*, 566 U.S. [658, 664], 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 2012 (2012)). "[N]umerous Supreme Court and Fifth Circuit decisions gave ... clear warning that when a public employee engages in speech outside of his employment duties, and the employee directs his speech externally rather than within the chain of command, the employer may not discipline the employee for engaging in the speech in question." *Hardesty v. Cochran*, 621 F. App'x 771, 780 (5th Cir. 2015) (citing *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 473 (5th Cir. 2014)). Further, there exists clear precedent that "citizen speech can include information learned through the plaintiff's job regarding those for whom he or she works. See *Lane*, 573 U.S. at 236, 134 S.Ct. 2369 (holding that protection of citizen speech "remains true when speech concerns information related to or learned through public employment"). Thus, Defendants are not entitled to summary judgment based on qualified immunity.

9

## II. Malicious interference with employment

Plaintiff Sherman also asserts a malicious/tortious interference with employment claim against the Defendants. To establish a claim of tortious interference with contract, Plaintiff must show:

> (1) that the acts were intentional and willful;
> (2) that they were calculated to cause damage to the plaintiff in his lawful business;
> (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause (which constitutes malice); and
> (4) that actual damage and loss resulted.

*Protective Serv. Life Ins. Co. v. Carter*, 445 So.2d 215, 217 (Miss. 1983).

To support her malicious interference with employment claim, Plaintiff relies on both the evidence analyzed above and additional evidence not yet considered by the Court. The Defendants, however, do not directly argue there to be no genuine dispute of material fact as to the elements of this claim but instead argue that the Defendants are privileged to interfere with employment unless in bad faith and that a malicious interference claim itself is duplicative and overused in federal court.

A supervisor is privileged to interfere with an employee's employment contract unless the supervisor's actions are taken in bad faith. *Wigginton v. Washington Cnty.*, 2013 U.S. Dist. LEXIS 86875, 2013 WL 3157565, at *9 (N.D. Miss. June 20, 2013). "Direct evidence of bad faith is not necessary; rather, a finding of bad faith can be inferred from other evidence." *Guest-White v. Checker Leasing, Inc.*, 2016 WL 595407, at *6 (N.D. Miss. Feb. 11, 2016).

Plaintiff Sherman has presented competent summary judgment evidence showing that she made multiple complaints regarding ICC's illegal conduct to Defendants Lowder and Waters. Plaintiff also presented evidence that after these complaints, she was placed on a performance improvement plan, which Sherman responded to with a rebuttal, demonstrating how she was

10

actively meeting, or exceeding, her job's duties. Plaintiff Sherman has also testified that Defendant Waters, who became the supervisor of Plaintiff in 2018, was in charge of monitoring Plaintiff's progress in response to the performance improvement plan. Further, Plaintiff provided testimony that after months of not checking in with Plaintiff on her progress under the performance improvement plan, Defendant Waters recommended that Sherman be relieved from her position on March 24, 2021. These allegations also include the summary judgment evidence that the Court has already discussed, such as Plaintiff's evidence submitted showing that the Defendants were made aware repeatedly for years that fraudulent activity was taking place.

The Court finds that Plaintiff Sherman has provided sufficient evidence to survive summary judgment on this claim, especially considering that the Defendants have not alleged that any element of the claim cannot be shown with the current summary judgment evidence, instead only arguing that there has been no bad faith. Plaintiff Sherman has provided testimony and summary judgment evidence that Defendants interfered with her employment and that the interference timeline, to a degree at least, follows Plaintiff's reporting timeline. This circumstantial evidence, considered as a whole, creates a question of fact as to whether the Defendants acted in bad faith with interfering with Plaintiff's employment.

Further, the Court acknowledges that a court in this district has previously found that a malicious interference with employment claim to be duplicative of the available federal claims. However, the Court also notes that many other courts in this district have examined a malicious/tortious interference claim in depth, giving the claim a full analysis rather than dismissing it at the outset. *Ford v. Wal-Mart Stores East, LP*, 2022 WL 3040627 * 19 (N.D. Miss Aug. 1, 2022); *Dixon v. Alcorn County, Mississippi*, 2022 WL 610268 (N.D. Miss. March 1, 2022).

The Court finds that Defendants' motion for summary judgment as to this claim should also be denied on this basis.

### III.    *McArn* Claim

Plaintiff Sherman also brings a *McArn* claim against Defendant ICC for termination in violation of public policy, alleging that she was terminated for reporting illegal acts of her employer, ICC, and also for refusing to participate in illegal acts. *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993). *McArn* held that "an employee who refuses to participate in an illegal act ... shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer." *McArn*, 626 So. 2d at 607. Further, "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing an action in tort for damages against his employer." *Id*.

Defendants argue that Plaintiff's reports and communications in issue are personal grievances about her superiors rather than an effort to report criminal or illegal acts of ICC as required by state law. Applicability of the exception does not require that a crime has already been committed, but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties. *Roop v. S. Pharms. Corp.*, 188 So. 3d 1179, 1185 (Miss. 2016). However, a review of Plaintiff's report that was sent to both her employer and the state auditor shows that Plaintiff's report was more than that of just personal grievances. Plaintiff's report that was also sent to the State Auditor appears to allege that ICC and/or Defendant Lowder was involved in fraud and more specifically fraud that caused ICC to receive funds under false pretenses. The Court finds this report to be more than that of just personal grievances, and that the report clearly contains reports of allegedly fraudulent and illegal acts.

Defendants also argue that the acts complained of in Plaintiff's report do not constitute crimes or illegal acts that have criminal penalties, as required by the law. *Id.* Plaintiff has provided the indictment of Defendant Lowder as summary judgment evidence that, at the very least, some of the reported actions were criminal in nature. The indictment states that Defendant Lowder essentially intended to defraud the Mississippi Community College Board, Mississippi Department of Employment Security, and the State of Mississippi by falsifying, concealing, or covering up material facts and/or used false or fraudulent documents and writings in order to conceal that ICC obtained reimbursement money in violation of Mississippi Code Section 97-10-10. Plaintiff Sherman has sufficiently provided summary judgment evidence that demonstrates that at least some of the complained of acts constitute criminal acts in violation of the law.

Further, to the extent the Defendants argue that Plaintiff's claims for emotional distress are barred by the Mississippi Workers' Compensation Act, the Court finds this argument to not be well taken. Defendants state that since Plaintiff's alleged emotional distress injury was incurred as a result of actions taken during her employment with ICC, Plaintiff is therefore barred from recovery under common law. The Mississippi Workers' Compensation Act specifically defines "injury" as "accidental injury," so that an injury which results from another's willful or intentional acts is not covered by the Act. See *Davis v. Pioneer Inc.*, 834 So.2d 739, 742 (Miss.App.2003). In this instance, Plaintiff is not arguing that the Defendants accidentally injured her, but instead is arguing that the actions taken by the Defendants discussed in this cause were intentional and willful, and thus, Defendants' argument is not well taken.

## IV.    Whistleblower Claims

Lastly, Plaintiff Sherman asserts that Defendants ICC and Allen discharged Plaintiff in violation of the Mississippi Whistleblower statute. The Mississippi Whistleblower statute

13

provides, in relevant part: "No agency shall dismiss or otherwise adversely affect the compensation or employment status of any public employee because the public employee testified or provided information to a state investigative body whether or not the testimony or information is provided under oath." MISS. CODE ANN. § 25-9-173(1). Also, a member of the agency's governing board or authority can also be held individually liable under the Mississippi Whistleblower Statute. MISS. CODE ANN. § 25-9-175.

Defendants ICC and Allen assert that Plaintiff's claims under the Mississippi Whistleblower Statute are barred as there has been no showing of retaliation towards the Plaintiff. These Defendants, as argued earlier, assert that Plaintiff was terminated due to her work performance and that a negative performance evaluation does not constitute an adverse employment action.

Plaintiff Sherman has provided competent summary judgment evidence showing that she made and sent a report, that including to the Statute Auditor, alleging that illegal or criminal acts were taking place at ICC, while also describing how these events were taking place. Plaintiff has also submitted evidence countering Defendants' assertion that her work performance was lacking. Further, as discussed before, Plaintiff has submitted evidence showing that at least some of the actions reported were criminal, as Defendant Lowder was indicted following her report to the State Auditor, and Plaintiff has submitted evidence that she was terminated after the State Auditor's office conducted a raid on ICC following her report. The Court finds that Plaintiff Sherman has provided summary judgment evidence so that a question of material fact exists as to whether she was terminated due to providing information to the State Auditor, and thus Defendants' motion is denied as to this claim.

### Conclusion

The Court finds that Defendant Joe Lowder's Motion for Joinder [90] is GRANTED and

for the reasons stated above, the Court finds that Defendants Itawamba Community College, Tzer

Nan Waters, Joe Lowder, and Dr. Jay Allen's Motion for Summary Judgment [88] is DENIED.

An order in accordance with this opinion shall issue this day.

This, the ___1st___ day of August, 2023.

Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE